UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| NEW YORK LIFE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>V.<br><br>MASSIEL ORTIZ and JULIA KLAH,<br><br>Defendants. | C.A. No. 14-074/S |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
**DISMISSING DEFENDANT MASSIEL ORTIZ'S COUNTERCLAIMS**

Plaintiff New York Life Insurance Company ("New York Life") moves pursuant to F.R. Civ. P. 56 and on the Affidavit of Christine D. Navin for summary judgment dismissing Defendant Massiel Ortiz's counterclaims.

New York Life files herewith the Affidavit of Christine D. Navin, a LR 56 Statement of Undisputed Facts and a Memorandum in support.

                                       */s/ Brooks R. Magratten*
                                       Brooks R. Magratten, Esq. (#3585)
                                       Nicholas P. Brown, Esq. (#8510)
                                       PIERCE ATWOOD LLP
                                       72 Pine Street
                                       Providence, RI 02903
                                       (401) 490-3422 Tel
                                       (401) 588- 5166 Fax
                                       bmagratten@pierceatwood.com
                                       nbrown@pierceatwood.com

                                       *Attorneys for Defendant*
                                       *New York Life Insurance Company*

Date:  May 8, 2014

## **CERTIFICATE OF SERVICE**

      I certify that the within document was electronically filed with the clerk of the court on May 8, 2014, and that it is available for viewing and downloading from the Court's ECF system. Service by electronic means has been effectuated on all counsel of record.

                                */s/ Brooks R. Magratten*

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

NEW YORK LIFE INSURANCE
COMPANY,

    Plaintiff,

V.

MASSIEL ORTIZ and JULIA KLAH,

    Defendants.

C.A. No. 14-074/S

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT
<u>TO DISMISS COUNTERCLAIMS</u>**

<u>Introduction</u>

Plaintiff New York Life Insurance Company ("New York Life") initiated this interpleader action to require the defendants to settle or adjudicate amongst themselves their respective claims to a life insurance policy death benefit arising from the death of Mr. Gandy S. Kaydea.

Mr. Kaydea on or about November 28, 2012 signed an application for a life insurance policy. New York Life accepted the application and issued policy no. 23366398 with a Death Benefit of $250,000.

On or about March 20, 2013 Mr. Kaydea was reportedly murdered and his body burned in a Cranston, Rhode Island cemetery. Authorities report that the investigation of Mr. Kaydea's death is ongoing. They have identified family members of the deceased and beneficiaries as persons "of interest." Beneficiaries have made competing claims to the Death Benefit.

In response to New York Life's Interpleader Complaint, the Defendant Massiel Ortiz responded with counterclaims for breach of contract, "breach of the obligation of good faith and

{W4197167.1}

fair dealing", negligence, misrepresentation / omission, "bad faith claims settlement practices", "unfair or deceptive consumer practices" and "for attorneys fees under §9-1-45. Because none of the Defendant Massiel Ortiz's counterclaims can be sustained as a matter of law, New York Life now moves, concurrently with its Motion for Interpleader Relief, for summary judgment dismissing the counterclaims. The Defendant Julia Klah has answered the Interpleader Complaint and cross-claimed for the Death Benefit at issue.

## Background

Mr. Kaydea signed an application for a life insurance policy on or about November 28, 2012. Statement of Undisputed Facts ("SUF"), ¶ 1. New York Life approved the application and issued policy no. 23366398 with a $250,000 Base Policy Face Amount and beneficiaries Mr. Kaydea designated:

> First  – Massiel Ortiz – Intended Spouse – 100%
> Second – Julia Klah – Mother – 100%

SUF, ¶ 2. The Policy provides, in part: "we will pay the life insurance proceeds to the beneficiary promptly when we have due proof that the Insured died on or after the Effective Date of this policy, subject to all of this policy's provisions." SUF, ¶ 3.

According to a death certificate, Shad G. Kaydea, Jr. (a/k/a Gandy S. Kaydea) was born in Liberia on April 7, 1990. He was never married. SUF, ¶ 4. According to an investigative report obtained by New York Life:

> Twenty-two-year-old Gandy Kaydea of Providence was found burning in the Pocasset Cemetery in Cranston, RI on 3/20/2013. Firefighters originally responded for a report of a small brush fire near the cemetery entrance. Instead they stumbled upon a body that was engulfed in flames. Officials with the medical examiner's office told The Providence Journal that Kaydea died from ligature strangulation before his body was set afire. No one has been arrested in connection with the killing. Cranston police believe Kaydea's death was gang-related and the investigation is ongoing. Kaydea was working on getting his GED and was a rapper known as "Young Shad" who was followed by thousands of

people on Twitter and YouTube. SUF, ¶ 5.

Police on April 11, 2013 called and questioned a New York Life sales agent regarding the Policy. SUF, ¶ 6. New York Life received on April 12, 2013 an "Administrative Subpoena" from the Cranston, Rhode Island Police Department requesting any and all documents/data/information pertaining to any and all policies taken out or maintained in the name of the insured, Mr. Kaydea. SUF, ¶ 7.

The Defendant Massiel Ortiz submitted a claim form to New York Life dated April 29, 2013. SUF, ¶ 8. Because Mr. Kaydea died within the first two years of coverage, New York Life conducted a routine investigation into the representations on the application as well as the circumstances of Mr. Kaydea's death. SUF, ¶ 9. New York Life wrote Ms. Ortiz a May 2, 2013 letter explaining that it was conducting a contestability investigation, which would include obtaining medical records, and that investigators would be contacting her. SUF, ¶ 10.

Following a May 3, 2013 telephone conversation between a New York Life representative and Cranston Police case detective, the representative wrote: "the homicide is an open active investigation. At this time they cannot rule anyone out. They would not discuss any other details." SUF, ¶ 11.

A further investigative report obtained by New York Life stated:

On 05/07 the [Cranston Police] records department stated they are unable to release the report at this time. They referred us to Captain Carmody to approve a release of report or information on the case.

The Captain referred us to Detective John Cardone / Detective Lindsey at 401-477-5047. Contact was made with Detective Lindsey and he stated that a report will not be released on this case. He was able to confirm that the insured was not committing a felony at the time of death. It did not appear that the insured was the aggressor he was the victim in this case. At this time he was able to confirm that the family members and beneficiary are listed as people of interest in this case. He requested that we contact their office if New York Life decides to pay

out on this policy.

SUF, ¶ 12.

New York Life attempted in the following months to contact the second beneficiary, Julia Klah. A New York Life sales agent reported having a telephone conversation before September 5, 2013 with Ms. Klah in which she was angry, said "no one is going to benefit from the death of my son." SUF, ¶ 13. New York Life was informed that Ms. Klah retained a Warwick, Rhode Island lawyer Richard Corley who, in turn, retained an investigator to examine the circumstances of Mr. Kaydea's death. SUF, ¶ 14.

A New York Life representative again contacted a Cranston Police case detective on September 6, 2013. The representative's file note states:

> I was informed that the homicide is an open active investigation. At this time they cannot rule anyone out. They would not discuss any other details. I was referred to the Rhode Island AG's office. They would only say it is a very active investigation, and they hope to make some new developments in a month or so.

SUF, ¶ 15.

Attorney Ronald Bonin wrote New York Life on or about October 3, 2013. He indicated that he represented Ms. Ortiz, intended to probate the Estate of Mr. Kaydea and have Ms. Ortiz appointed as Executrix so she could provide the necessary authorizations to permit New York life to conduct its contestability investigation. SUF, ¶ 16.

As part of its contestability investigation New York Life attempted to obtain school, pharmacy, medical and criminal records pertaining to Mr. Kaydea. SUF, ¶ 17.

According to an October 27, 2013 Investigative Report, Providence, Rhode Island Police reported having no records of any arrest of Mr. Kaydea. Cranston Police indicated they had a record of a March, 2012 arrest of Mr. Kaydea. Cranston Police refused to release further information while its investigation of Mr. Kaydea's death remained pending. SUF, ¶ 18.

A New York Life representative again attempted to contact Cranston Police and the Rhode Island Attorney General's Office between December 12 and 17, 2013. A December 17, 2013 claim note states:

> Received a vm from Cranston PD and I was referred to the Rhode Island AG's office for questions on this case. The AG's office had no additional information other than it's an active investigation.

SUF, ¶ 19.

A New York Life representative received a telephone call from the Defendant, Ms. Ortiz, on December 31, 2013. Ms. Ortiz then informed the representative that she "was not on speaking terms with the insured for a while and that he only lived with her for about six months…" Ms. Ortiz separately reported having lived with Mr. Kaydea from January to April or May, 2012. She had a child with Mr. Kaydea. SUF, ¶ 20.

Ms. Ortiz also informed New York Life in the December 31, 2013 telephone call that "she tried to get estate papers but that did not work out, and she cannot sign any authorizations for any records." Ms. Ortiz then indicated that she was no longer employing the Moretti, Perlow and Bonin law firm. SUF ¶ 21.

New York Life received a January 8, 2014 letter from Attorney Stephen Rodio demanding, on behalf of Ms. Ortiz, payment of the Death Benefit within five business days. SUF, ¶ 22. Authorities in January, 2014 confirmed to New York Life that the death of Mr. Kaydea was "an active investigation no one can be ruled out at this time." SUF, ¶ 23.

New York Life in January 2014 concluded its contestability investigation and determined that the Death Benefit was payable. SUF, ¶ 24.

New York life on February 7, 2014 filed its Complaint for Interpleader Relief. [Dkt #1]. The defendants Ms. Ortiz and Ms. Klah have responded to the Complaint. [Dkt #2, 5]. On March 18, 2014, Ms. Klah answered the Complaint and asserted a cross-claim against Ms. Ortiz.

[Dkt #5].  Ms. Ortiz on March 24, 2014 moved to dismiss the crossclaim. [Dkt #7].

## ARGUMENT

### I.     Ms. Ortiz's Counterclaims Cannot Stand as a Matter of Law

Whether captioned as a breach of contract, negligence, bad faith or other claim, Ms. Ortiz's counterclaims all arise from her contention that New York Life should have paid the Death Benefit to her alone and ignored 1) the potential impact of R.I.G.L § 33-1.1-2 (the Rhode Island "Slayer" statute); 2) a competing claim by the secondary beneficiary, Ms. Klah; and 3) New York Life's right to investigate the claim.  The Third Circuit Court of Appeals addressed this question in *Prudential Ins. Co. v. Hovis*, 553 F.3d 258 (3rd Cir. 2009).  Prudential in the *Hovis* case sought to interplead a $100,000 life insurance death benefit where it received competing claims to the death benefit.  The court held that the protections of the interpleader statute extend to counterclaims asserted by one of the competing claimants against the stakeholder where the stakeholder bears no blame for the controversy over the ownership of the death benefit.  Id., at 264-65.

The *Hovis* court found that allowing counterclaims to stand against the stakeholder in such circumstances was fundamentally inconsistent with the purpose of interpleader relief:

> To allow Prudential to be exposed to liability under these circumstances would run counter to the very idea behind the interpleader remedy-namely, that a 'stakeholder [should] not [be] obliged at his peril to determine which claimant has the better claim.'  Put another way, where a stakeholder is allowed to bring an interpleader action, rather than choosing between adverse claimants, its failure to choose between the adverse claimants (rather than bringing an interpleader action) cannot itself be a breach of a legal duty.

Id., at 265 (internal citations omitted).

Other courts have followed the *Hovis* rule:  *J.G. Wentworth Originations, LLC v. Mobley*, 2012 WL 4922862 (D.Md. Oct. 12, 2012); *Reliance Standard Ins. Co. v. Winiarski*, 2012 WL 1564540 (W.D. Pa. May 3, 2012).  The Ninth Circuit in *Lee v. West Coast Life Ins. Co.*, 688 F.3d

1004 (9th Cir. 2012), recognized that while interpleader relief does not normally shield the stakeholder from liability arising independently of the stake at issue, liability arising from the "you should have paid me alone" claim cannot stand once interpleader relief has been properly sought. Id., at 1012-14.

Here there can be no credible contention that New York Life in any way contributed to the controversy now before this court. The Policy owner, Mr. Kaydea, was murdered. Within a month of his death Police questioned a New York Life representative about the Policy. SUF, ¶ 6. The following day Cranston, Rhode Island subpoenaed records from New York Life. SUF, ¶ 7.

On or about May 7, 2013 Cranston Police informed New York Life "that the family members and beneficiary are listed as people of interest…." SUF, ¶ 11. New York Life has since reached out to authorities on a regular basis, only to be told that the investigation is ongoing. SUF, ¶¶ 15, 18, 19 and 23.

Moreover, because Mr. Kaydea died within the Policy contestability period, New York Life conducted an investigation of the representations in the insurance application as well as the circumstances of Mr. Kaydea's death. SUF, ¶ 9. New York Life attempted to obtain school, pharmacy, medical and criminal records pertaining to Mr. Kaydea. SUF, ¶ 17. New York Life was unable to obtain an effective authorization to release information from Ms. Ortiz. SUF, ¶ 21.

New York Life commenced this Interpleader Action shortly after it concluded its contestability investigation and determined that the Death Benefit was payable. SUF, ¶ 24.

Interpleader relief is appropriate where, as here, a beneficiary's claim is potentially barred by a slayer statute. *See, e.g., Prudential Ins. Co. of America v. Athmer*, 178 F.3d 473 (7th

Cir. 1999); *Connecticut General Life Ins. Co. v. Rines*, 351 F.Supp. 2d 493 (W.D. Va. 2005); *Prudential Ins. Co. of America v. Tolbert*, 320 F.Supp. 2d 1378 (S.D. Ga. 2004).

Ms. Ortiz's counterclaims, each grounded in the contention that New York Life erred in not paying her the Death Benefit immediately, are inconsistent with the principles of interpleader relief. *See Hovis, Mobley, Winiarski, Lee*. They should now be dismissed as matter of law.

## II. The Breach of Contract, Breach of "Obligation of Good Faith and Fair Dealing" and Bad Faith Counterclaims Fail

Ms. Ortiz alleges New York Life "breached its contractual obligations by failing and refusing to pay the benefits due Ms. Ortiz under the Policy" and further breached the "Obligation of Good Faith and Fair Dealing" and engaged in "Bad Faith Claims Settlement Practices." Oritz Answer & Counterclaims [Dkt #2], ¶¶ 36, 38-40, 49-52. These counterclaims are baseless. New York Life does not refuse to pay Ms. Ortiz any portion of the Death Benefit that may be properly payable to her. New York Life has acknowledged that the Death Benefit is payable. In the circumstances of this claim, however, New York Life cannot determine who among competing claimants is entitled to the Death Benefit without exposing itself to multiple claims and the hazard of potentially having to pay the Death Benefit twice. This is precisely why interpleader relief is appropriate in these circumstances and why, where an insurer has sought interpleader relief, counterclaims for breach of contract or bad faith do not lie. *Lexington Ins. Co. v. Jacobs Indust. Maintenance Co., LLC*, 435 Fed. Appx. 144 (3rd Cir. 2011); *National Life Ins. Co. v. Alembik-Eisner*, 582 F. Supp. 2d 1362, 1369-72 (N.D. Ga. 2008); *Genworth Life Ins. Co. of Sehorne*, 2008 WL 912438 (M.D. Fla. April 1, 2008).

## III. Ms. Ortiz's Negligence Counterclaim Fails as a Matter of Law.

In her counterclaims (Count III) Ms. Ortiz essentially alleges that New York Life acted negligently in not paying her the Death Benefit promptly. Ms. Ortiz's claim cannot lie because

{W4197167.1}
8

New York Life soon after Mr. Kaydea's death was faced with competing claims to the same death benefit as well as the possibility of the Rhode Island Slayer Statute barring payment to one or more beneficiaries. New York Life cannot simultaneously breach a duty to pay Ms. Ortiz while availing itself of its right to seek interpleader relief. In these circumstances New York Life cannot be deemed to have acted negligently by availing itself of the interpleader remedy available to it. *Hovis*.

### IV. Ms. Ortiz's Misrepresentation/Omission Counterclaim Fails as a Matter Of Law

Ms. Ortiz in Count IV accuses New York Life of misrepresenting the reason for non-payment of the Death Benefit. *See* Ortiz Answer & Counterclaims, ¶¶ 43-48. First, there was no misrepresentation. As is New York Life's standard practice when death occurs within the contestability period, New York Life will, and in this case did, investigate the representations in the application as well as the circumstances of death. SUF, ¶ 9.

From the time of Mr. Kaydea's death until the filing of this Interpleader action, New York Life conducted a contestability investigation and had repeated contacts with authorities to determine the status of the homicide investigation. SUF, ¶¶ 6, 7, 10, 11, 14, 15 and 18.

Moreover, even if there were a misrepresentation or omission, Ms. Ortiz cannot establish that she suffered any harm as a result. She has not, as yet, been denied the Death Benefit. Should this Court find Ms. Ortiz to be entitled to all or a portion of the Death Benefit, then she will not have suffered the "injury or damage" she has alleged in ¶ 48 of her counterclaims. Should the Court find Ms. Ortiz not eligible to receive the Death Benefit then her loss, if any, will not have been the result of any misrepresentation or omission by New York Life.

### V.     Ms. Ortiz's "Unfair or Deceptive Consumer Practices" Counterclaim Fails.

Ms. Ortiz alleges in Count VI of her counterclaims that "[i]n the acts and omissions set forth herein, New York Life has engaged in unfair and/or deceptive consumer practices, in violation of R.I.G.L. § 6-13.1.1 (sic.) et seq."

Ms. Ortiz cannot prevail under the Rhode Island Deceptive Trade Practices Act ("RIDTPA"), R.I.G.L. §§ 6-13.1-1 et seq., because the Act, by its terms, does not apply to "actions or transactions permitted under laws administered by the department of business regulation or other regulatory body or officer acting under statutory authority of this State…" § 6-13.1-4. Because life insurance is regulated extensively by the Department of Business Regulation, Insurance Division, the RIDTPA does not apply to life insurance transactions. See *State v. Piedmont Funding Corp.,* 119 R.I. 695, 382 A.2d 819 (1978).

Moreover, the RIDTPA allows a private right of action to '[a]ny person who purchases or leases goods or services … and thereby suffers any ascertainable loss of money or property ..." § 6-13.1-5.2. In this matter Ms. Ortiz is not a purchaser of life insurance, only a designated beneficiary. She was not the Policy owner. She has no standing to assert a claim under the RIDTPA. *See Metropolitan Life Ins. Co. v. Barretto,* 178 F. Supp. 2d 745, 750 (S.D. Tex. 2001).

### VI.     Ms. Ortiz's R.I.G.L. § 9-1-45 Counterclaim Fails.

In Count VII of her counterclaims, Ms. Ortiz seeks attorney's fees under R.I.G.L. § 9-1-45, which provides:

> The court may award a reasonable attorney's fee to the prevailing party in any civil action arising from a breach of contract in which the court:
>
> (1) Finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party; or
>
> (2) Renders a default judgment against the losing party.

Liability for attorney's fees under § 9-1-45 is contingent on Ms. Ortiz's ability to prevail on her breach of contract claim. For the reasons discussed in p.8, *supra*, Ms. Ortiz cannot prevail in a breach of contract claim. Even if Ms. Ortiz were to prevail, the case does not present "a complete absence of a justiciable issue of either law or fact..."

### VII. There Being No Genuine Dispute of Fact, Summary Judgment Should Now Enter for New York Life

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"When presented with a motion for summary judgment, courts should 'pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" *NASCO, Inc. v. Public Storage, Inc.*, 29 F.3d 28, 31–32 (1st Cir. 1994) (quoting *Wynne v. Tufts Univ. Sch. of Medicine*, 976 F.2d 791, 794 (1st Cir. 1992), *cert. denied*, 507 U.S. 1030 (1993)). Initially, the moving party must aver that the non-moving party lacks evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also*, *e.g.*, *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990). But once it has done so, the burden shifts to the non-moving party to set forth specific facts—in the form of definite, substantial, and competent evidence—showing a genuine, triable issue as to every element of its case. Celotex, 477 U.S. at 324; *see also*, *e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Torres v. E.I. DuPont de Nemours & Co.*, 219 F.3d 13, 18 (1st Cir. 2000); *Mesnick v. General Elec. Co.*, 950 F.2d 816, 825 (1st Cir. 1991).

"A 'genuine' dispute requires more than suspicion or bluster." *Quaker State Oil Refining Corp. v. Garrity Oil Co., Inc.*, 884 F.2d 1510, 1512 (1st Cir. 1989). "The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense

{W4197167.1}
11

that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial." *Id.* at 1512–13 (quoting *Mack v. Great Atlantic & Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir. 1989)). "The disagreement must also be material: 'The mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.'" *Id.* at 1513 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original)).

Here the material facts cannot be disputed. Authorities informed New York Life within two months of Mr. Kaydea's death by strangulation that "the family members and beneficiaries are listed as people of interest." SUF, ¶ 11. Authorities repeatedly advised New York Life that the investigation remains open and that they "cannot rule anyone out." SUF, ¶¶ 14, 15 and 18.

The beneficiaries, Ms. Ortiz and Ms. Klah, have each asserted claims to the Death Benefit. New York Life is unable to determine to whom the Death Benefit is properly payable without exposing itself to multiple claims and the risk of having to pay the same Death Benefit more than once.

For the foregoing reasons, interpleader relief is appropriate in this case and the defendant Ortiz's counterclaims should now be dismissed.

## **CONCLUSION**

The Plaintiff New York Life Insurance Company's motion for summary judgment should be granted, the Defendant Massiel Ortiz's counterclaims dismissed, and an order entered granting New York Life the interpleader relief requested.

          */s/ Brooks R. Magratten*
          Brooks R. Magratten, Esq. (#3585)
          Nicholas P. Brown, Esq. (#8510)
          PIERCE ATWOOD LLP
          72 Pine Street
          Providence, RI 02903
          (401) 490-3422 Tel
          (401) 588- 5166 Fax
          bmagratten@pierceatwood.com
          nbrown@pierceatwood.com

          *Attorneys for Defendant*
          *New York Life Insurance Company*

Date:  May 8, 2014


## CERTIFICATE OF SERVICE

 I certify that the within document was electronically filed with the clerk of the court on May 8, 2014, and that it is available for viewing and downloading from the Court's ECF system. Service by electronic means has been effectuated on all counsel of record.

          */s/ Brooks R. Magratten*

{W4197167.1}

13