# UNITED STATES DISTRICT COURT
# DISTRICT OF RHODE ISLAND

NEW YORK LIFE INSURANCE
COMPANY,

     Plaintiff,

     V.

MASSIEL ORTIZ and JULIA KLAH,

     Defendants.

C.A. No. 14-074/S

## AFFIDAVIT OF KAREN Z. SCHUTTER

STATE OF MISSOURI    )
                 ) SS:
COUNTY OF JACKSON   )

Karen Z. Schutter, being duly sworn, says:

1.      I am the Executive Director of the Interstate Insurance Product Regulation Commission (the "Commission").

2.      I am over twenty one years old and have personal knowledge of the facts stated herein.

3.      I am an attorney admitted to practice in the Bars of Kansas and Missouri.

4.      Prior to working for the Commission, I was employed by the National Association of Insurance Commissioners ("NAIC") for ten years, serving in various legal and management capacities.

5.      Since the early 1990s under the auspices of the NAIC, state insurance regulators have recognized the need to identify and make improvements in many areas of state insurance regulation. One of these areas is speed-to-market, focusing on making the process for filing, review and approval of insurance products more efficient and streamlined.

6.      Through collective discussions in the NAIC committee structure, state insurance regulators sought to facilitate interstate cooperation and develop national uniform standards for the content, approval and certification of asset-based insurance products that would have the force of law in multiple states.  An interstate compact emerged as an ideal way of addressing this issue.

7.      A compact is a formal agreement between states that has characteristics of both statutory law and contractual agreements.

8.      Compacts traditionally handled border disputes and currently are used to address broad public policy issues that transcend state boundaries.

9.      The NAIC formed a working group in 2002 to develop model compact legislation.  The NAIC adopted an initial model law in December 2002 with the understanding that it would be a starting point for discussion with state legislators, attorneys general, governors and other stakeholders.

10.     The NAIC worked closely with the National Conference of State Legislatures ("NCSL"), the National Conference of Insurance Legislators ("NCOIL"), the National Association of Attorneys General and other state officials to further refine and enhance the model compact legislation.  In July 2003 the NAIC adopted amendments to the model compact legislation which is the current version of the Interstate Insurance Product Regulation Compact (the "Compact").

11.     Both the NCSL and NCOIL have endorsed the Compact.

12.     Compacts enable states – in their sovereign capacities – to act jointly and cooperatively.

13.    The Compact was created in March 2004 with the enactment of the model compact legislation by Colorado and Utah.

14.    Rhode Island adopted the Compact in July 2004.

15.    By the terms of the Compact, the Commission was brought into existence upon meeting the threshold requirements of 26 states or 40% of premium volume nationwide; both of which were met in May 2006.

16.    At present 43 States and Puerto Rico have adopted the Compact and appointed members to the Commission.

17.    The Compact governs only the following insurance product lines: individual and group life, annuity, disability and long-term care.

18.    For each of these insurance product lines the Compact establishes a central clearinghouse for prompt review of insurance products, and in certain cases advertisements, based on Uniform Standards.

19.    Uniform Standards form the basis for review, approval and certification of insurance products submitted to the Commission.

20.    Uniform Standards must be adopted by a two-thirds vote of the Commission to become available for insurance product submissions. A member of the Commission may take steps to opt out of a Uniform Standard by legislation or regulation pursuant to the terms of the Compact.

21.    Attached hereto as Exhibit A is the Commission's Uniform Standard IIPRC-L-04-I ("Individual Term Life Insurance Policy Standards"), adopted August 27, 2008 with amendments effective January 15, 2011.

22.    The Death Benefit Proceeds provision at Section 3G(2) of the Individual Term Life Insurance Policy Standards establishes required policy provisions regarding the applicable interest payable on a claim under policies approved by the Commission, which are mandatory for insurance products submitted to the Commission under such Uniform Standards.

23.    Rhode Island has not opted out of the Individual Term Life Insurance Policy Standards.

24.    The Commission is authorized to review and approve insurance products submitted under the Individual Term Life Insurance Policy Standards for issuance to residents of Rhode Island.

25.    The policy at issue in this case, New York Life Policy no. 23366398, was reviewed and approved by the Commission.

Karen Z. Schutter

Subscribed and sworn to before me this 3 nd day of November, 2014.

Cynthia Catron
Notary Public
My Commission Expires: Dec. 20, 2016

CYNTHIA CATRON
Notary Public - Notary Seal
State of Missouri
Commissioned for Jackson County
My Commission Expires: December 20, 2016
Commission Number: 12408541

Case 1:14-cv-00074-WES-PAS    Document 39-1    Filed 11/03/14    Page 5 of 30 PageID #: 574

**CERTIFICATE OF SERVICE**

      I certify that the within document was electronically filed with the clerk of the court on November 3 2014, and that it is available for viewing and downloading from the Court's ECF system. Service by electronic means has been effectuated on all counsel of record.

                */s/ Brooks R. Magratten*

# Exhibit A



INTERSTATE INSURANCE
PRODUCT REGULATION COMMISSION

*States, Strength & Speed Aligned*

**IIPRC-L-04-I**
## AMENDMENT TO INDIVIDUAL TERM LIFE INSURANCE POLICY STANDARDS

1.    Date Adopted:  October 17, 2010

2.    Purpose and Scope:  The purpose of this rule is to establish reasonable uniform standards for Individual Term Life Insurance products filed with the Interstate Insurance Product Regulation Commission ("IIPRC").  These standards cover traditional forms of individual term life insurance, including renewable term for various term periods, term to a specified age, and decreasing term insurance.  Deposit term plans, plans that provide joint and last to die survivorship coverage, plans sold in connection with pre-need funeral arrangements, plans providing early duration reduced benefits, or plans providing return of premium benefits are outside the scope of these standards.

3.    Rules Repealed, Amended or Suspended by the Rule:  This rule amends the Individual Term Life Insurance Policy Standards adopted by the IIPRC August 27, 2008.

      The rule was amended for the purpose of clarifying the conditions for reinstatement of the policy and payment of overdue premium; and specify the availability of the mix and match and self-certification processes.

4.    Statutory Authority:  Among the IIPRC's primary purposes and powers is to establish reasonable uniform standards for insurance products covered under the Interstate Insurance Product Regulation Compact ("Compact"), specifically pursuant to Article I §2, Article IV § 2 and Article VII § 1 of the Compact, as enacted into law by each IIPRC member state.

5.    Required Findings:  None

6.    Effective Date:  January 15, 2011

© IIPRC

Date: 8/27/08
Adopted by the IIPRC

## INDIVIDUAL TERM LIFE INSURANCE POLICY STANDARDS

**Scope:** These standards are intended to apply to traditional forms of individual term life insurance, including renewable term for various term periods, term to a specified age, and decreasing term insurance.

Deposit term plans, plans that provide joint and last to die survivorship coverage, plans sold in connection with pre-need funeral arrangements, plans providing early duration reduced benefits, or plans providing return of premium benefits shall not be submitted under these standards.

**Mix and Match:** These standards are available to be used in combination with State Product Components as described in Section 110(b) of the Operating Procedure for the Filing and Approval of Product Filings.

**Self-Certification:** These standards are not available to be filed on a self-certification basis in accordance with the Rule for the Self-Certification of Products Filed with the Interstate Insurance Product Regulation Commission.

As used in these standards the following definitions apply:

"Cash value" is the guaranteed cash value for the plan of insurance.

"Cash surrender value" is the cash value reduced by indebtedness.

**Drafting Notes:**

Other terms may be used in the policy provided that they are used consistently.

The references to "age" and "insured" do not preclude joint plans. It is intended that additional provisions will be added to the Specialized Products/Marketing section to address joint first to die coverage.

The references to "policy" do not preclude Fraternal Benefit Societies from substituting "certificate" in their forms.

## § 1    ADDITIONAL SUBMISSION REQUIREMENTS

The following additional filing submission requirements shall apply:

**A.    GENERAL**

(1)    Include all forms filed for approval with the filing. Changes to a previously approved form shall be highlighted. The specifications page of a policy shall be completed with hypothetical data that is realistic and consistent with the other contents of the policy and any required actuarial memorandum in support of nonforfeiture values.

© IIPRC

Date: 8/27/08
**Adopted by the IIPRC**

(2)   If a filing is being submitted on behalf of a company, include a letter or other document authorizing the firm to file on behalf of the company shall be included with the filing.

(3)   If the filing contains an insert page, include an explanation of when the insert page will be used.

(4)   If the specification page of the policy contains variable items, include the Statement of Variability. The submission shall also include a certification that any change or modification to a variable item shall be administered in accordance with the requirements in the Variability of Information section, including any requirements for prior approval of a change or modification.

(5)   Include a certification signed by a company officer that the policy form has a minimum Flesch Score of 50.

(6)   Include a description of any innovative or unique features of each policy form.

(7)   State whether the policy is sex-distinct or unisex. If sex-distinct, the company shall confirm that the policy will not be issued in any employer-employee plans that are subject to the *Norris* decision and/or Title VII of the Civil Rights Act of 1964.

(8)   Include appropriate policy pages completed for each type of rating used by the company; for example, percentage of standard class premium, extra premium, temporary or permanent flat charge per $1,000 to demonstrate how the policy will disclose the rates and charges applicable to each type of rating class. This is not intended to require pages for all rating classes, but only examples of each type of rating applied by the company.

(9)   If the policy is for use with more than one term plan, include a separate set of uniquely numbered specification pages for each term plan being submitted for approval, along with a separate actuarial memorandum for each plan.

**B.    ACTUARIAL MEMORANDUM REQUIREMENT**

(1)   Include an actuarial memorandum prepared, dated and signed by the member of the American Academy of Actuaries who provides the following information for all available guarantee periods concerning the determination of the nonforfeiture values:

(a)   A demonstration that the values of the policy comply with the standards of the NAIC Standard Nonforfeiture Law for Life Insurance, model #808. The smoker/nonsmoker mortality tables in the NAIC Model Rule (Regulation) Permitting Smoker/Nonsmoker Mortality Tables For Use In Determining Minimum Reserve Liabilities And Nonforfeiture Benefits, or the mortality rates which are a blend of the male and female rates in the NAIC Procedure For Permitting Same Minimum Nonforfeiture Standards For Men and Women Insured Under 1980 CSO And 1980 CET Mortality Tables, or any other mortality tables approved for use by the NAIC in determining minimum nonforfeiture values, may be used in determining minimum nonforfeiture values. The company shall use the composite mortality table for issue ages at which there is no distinction between smoker and nonsmoker mortality rates and continue to use the table for all future attained ages;

© IIPRC

Date: 8/27/08
**Adopted by the IIPRC**

    (b)    A description of the policy and policy provisions which affect the nonforfeiture values;

    (c)    The formulae, assumptions and methodology used;

    (d)    Sample calculations for representative issue ages including issue age 35 if within the issue age range;

    (e)    Include a statement at the end of the actuarial memorandum certifying that the nonforfeiture values available under the policy equal or exceed the minimums required under the NAIC Standard Nonforfeiture Law for Life Insurance, model #808, for all ages, rate classes and durations at which the policy is available; and

    (f)    The range of issue ages and the minimum specified amount for which the policy will be issued.

**C.    VARIABILITY OF INFORMATION**

(1)    The company may identify items that will be considered variable only in the specification page. The item shall be bracketed or otherwise marked to denote variability. The submission shall include a Statement of Variability that will discuss the conditions under which each variable item may change.

(2)    Any change or modification shall be limited to only new issues of the policy and shall not apply to in force policies.

(3)    The following items shall only be changed upon prior approval:

    (a)    Mortality tables;

    (b)    Interest rate for cash value and nonforfeiture benefits;

    (c)    Term periods;

    (d)    Length of level premium periods;

    (e)    Decreasing term death benefit schedules; and

    (f)    Settlement option tables.

(4)    In addition to the items listed in Paragraph (3) above, a change or modification to any other item not specifically listed that may affect the derivation and compliance of policy values with any required minimum nonforfeiture values shall also be subject to prior approval. All submissions for approval of a change shall be accompanied by a demonstration, if applicable, signed by a member of the American Academy of Actuaries, that the policy continues to comply with the NAIC Standard Nonforfeiture Law for Life Insurance, model #808.

© IIPRC

Date: 8/27/08
**Adopted by the IIPRC**

(5)  The company may also identify product specifications that may be changed without prior notice or approval, as long as the Statement of Variability presents reasonable and realistic ranges for the item. These items include conversion periods, conversion credits, minimum loan amounts, charges for supplemental benefits and options, any ages assumed in the calculation of benefits and options, and policy loan interest rates. A zero entry for a range of values on the specifications page for any benefit or credit provided for in the language of the policy is unacceptable. Any change to a range requires a re-filing for prior approval and shall be accompanied by a demonstration, if applicable, signed by a member of the American Academy of Actuaries, that the policy continues to comply with the NAIC Standard Nonforfeiture Law for Life Insurance, model #808.

(6)  Notwithstanding Paragraph (1) above, items such as the insurance department address and telephone number, company address and telephone number, officer titles, and signatures of officers located in other areas of the policy may be denoted as variable and changed without notice or prior approval.

**Drafting Note:** The working group believes the above provisions address the issue. Industry may provide examples with specific detail to demonstrate the kinds of variability that they would seek in policies that is not contemplated by this section.

## D.    READABILITY REQUIREMENTS

(1)  The policy text shall achieve a minimum score of 50 on the Flesch reading ease test or an equivalent score on any other approved comparable reading test. See Appendix A for Flesch methodology.

(2)  The policy shall be presented, except for specification pages, schedules and tables, in not less than ten point type, one point leaded.

(3)  The style, arrangement and overall appearance of the policy shall give no undue prominence to any portion of the text of the policy or to any endorsements or riders.

(4)  The policy shall contain a table of contents or an index of the principal sections of the policy, if the policy has more than 3,000 words printed on three or fewer pages of text or if the policy has more than three pages regardless of the number of words.

## § 2    GENERAL FORM REQUIREMENTS

## A.    COVER PAGE

(1)  The full corporate name, including city and state of the company shall appear in prominent print on the cover page of the policy. "Prominent print" means, for example, all capital letters, contrasting color, underlined or otherwise differentiated from the other type on the form.

(2)  A marketing name or logo may also be used on the cover page of the policy provided that the marketing name or logo does not mislead as to the identity of the company.

© IIPRC

5

Date: 8/27/08
**Adopted by the IIPRC**

(3)   The company's complete mailing address for the home office or the office that will administer the policy shall appear on the cover page of the policy. The cover page of the policy shall include a telephone number of the company and, if available, some method of Internet communication. The telephone number of the insurance department of the state where the policy is delivered or issued for delivery is also required on either the cover page or the first specifications page.

(4)   Two signatures of company officers shall appear on the cover page of the policy.

(5)   A Right to Examine Policy provision that shall appear on the cover page of the policy or is visible without opening the policy.

(6)   A form identification number shall appear at the bottom of the form in the lower left hand corner of the form. The form number shall be adequate to distinguish the form from all others used by the company. The form number shall include a prefix of ICCxx (where xx represents the appropriate year the form was submitted for filing) to indicate it has been approved by the Interstate Insurance Product Regulation Commission.

(7)   A brief description that shall appear in prominent print on the cover page of the policy or be visible without opening the policy. The brief description shall contain at least the following information:

   (a)   A caption of the type of term coverage provided; for example, annually renewable term life insurance or decreasing term life insurance;

   (b)   An indication of "convertible" if the policy is convertible; and an indication as to whether the policy is renewable or non-renewable; participating or nonparticipating; and

   (c)   An indication of any war risk exclusion in the policy.

(8)   For any policy that is convertible, the cover page shall include the conversion period unless it is shown on the specification page.

**B.   SPECIFICATIONS PAGE**

(1)   The specifications page shall include the benefits, amounts, durations, premium information, and any other benefit data applicable to the insured.

(2)   If the policy is a participating policy, the specifications page shall indicate that the dividends are not guaranteed. In addition, if the company does not intend to credit dividends, then the specifications page shall state that dividends are not expected or anticipated to be paid.

(3)   For any policy that is convertible, the specifications page shall include the conversion period unless it is shown on the cover page.

Date: 8/27/08
**Adopted by the IIPRC**

**C.    FAIRNESS**

(1)    The policy shall not contain inconsistent, ambiguous, unfair, inequitable or misleading clauses, provisions that are against public policy as determined by the Interstate Insurance Product Regulation Commission, or contain exceptions and conditions that unreasonably affect the risk purported to be assumed in the general coverage of the policy.

**§ 3    POLICY PROVISIONS**

**A.    AMENDMENTS**

(1)    The policy shall not provide for unilateral amendments that reduce or eliminate benefits or coverage, or impair or invalidate any right granted to the owner under the policy except for amendments to conform to changes in any applicable provisions or requirements of the Internal Revenue Code.

(2)    Amendments to approved forms are subject to prior approval.

(3)    Subject to the prohibition against unfair discrimination, any amendment may apply prospectively to new owners and, if applicable, to new contributions of existing owners.

**Drafting Note:**  These standards are modified, as required or permitted by law, to enable fraternals to implement their respective articles and bylaws.  See Appendix B.

**B.    ARBITRATION**

(1)    Only arbitration provisions that permit voluntary post-dispute binding arbitration shall be allowed in policy forms. With respect to such a provision, the following guidelines apply:

    (a)    Arbitration shall be conducted in accordance with the rules of the American Arbitration Association ("AAA"), before a panel of 3 neutral arbitrators who are knowledgeable in the field of life insurance and appointed from a panel list provided by the AAA.

    (b)    Arbitration shall be held in the city or county where the policy owner or beneficiary lives.

    (c)    The cost of arbitration shall be paid by the company, to include any deposits or administrative fee required to commence a dispute in arbitration, as well as any other fee including the arbitrator's fee.

    (d)    Where there is any inconsistency between these guidelines and AAA rules, these guidelines control.

**Drafting Note:**  These standards are modified, as required or permitted by law, to enable fraternals to implement their respective articles and bylaws.  See Appendix B.

© IIPRC

7

**Date:** 8/27/08
**Adopted by the IIPRC**

## C.    ASSIGNMENT

(1)    The policy shall contain an assignment provision. The policy shall not include any restrictions on the availability of policy assignments, except in situations where restrictions are required for purposes of satisfying applicable laws or regulations.

(2)    The policy shall describe procedures for assignments and shall state that assignments, unless otherwise specified by the owner, shall take effect on the date the notice of assignment is signed by the owner, subject to any payments made or actions taken by the company prior to receipt of this notice.

(3)    The policy may state that the company shall not be liable for the validity of the assignment.

**Drafting Note:** Restrictions on assignment in policy forms such as right of first refusal or first offer provisions are prohibited by Item (1).

## D.    BENEFICIARY

(1)    The policy shall contain a beneficiary provision. The provision shall describe the procedures for designating or changing the beneficiaries, or for selecting default beneficiaries as may be necessary, and indicating when such designation is effective. The policy shall not include any restriction on change of beneficiary other than for the purposes of satisfying applicable laws or regulations.

(2)    The policy shall state that changes in beneficiary, unless otherwise specified by the owner, shall take effect on the date the notice of change is signed by the owner, subject to any payments made or actions taken by the company prior to receipt of this notice.

(3)    If irrevocable beneficiaries are referenced in the policy, the policy shall explain that such a beneficiary cannot be changed without the consent of the irrevocable beneficiary.

## E.    CONFORMITY WITH INTERSTATE INSURANCE PRODUCT REGULATION COMMISSION STANDARDS

(1)    The policy shall state that it was approved under the authority of the Interstate Insurance Product Regulation Commission and issued under the Commission standards. The policy shall also state that any provision of the policy that on the provision's effective date is in conflict with Interstate Insurance Product Regulation Commission standards for this product type is hereby amended to conform to the Interstate Insurance Product Regulation Commission standards for this product type as of the provision's effective date.

## F.    CONVERSION

(1)    A policy that is convertible shall contain a provision describing the conditions of the conversion privilege. The conversion period shall be shown on the cover page or specifications page.

(2)    The conversion provision shall describe the following information, if applicable:

© IIPRC

8

Date: 8/27/08
**Adopted by the IIPRC**

    (a)    When the first premium is due;

    (b)    What supplemental benefits included in the policy may be converted;

    (c)    The type or types of policies to which a conversion may be made;

    (d)    The minimum and maximum amount of coverage available for conversion;

    (e)    The criteria used to determine the premiums at the point of conversion; and

    (f)    Any evidence of insurability requirements. Such evidence would be limited to amounts in excess of the amount of life insurance in effect at the time of conversion and any supplemental benefits unrelated to the life risk.

(3)    The policy may provide that a discount is applied to the conversion policy total premium in the year of conversion. The discount or the method by which the discount is calculated shall be described in the policy.

(4)    The policy shall provide that the incontestability and suicide provisions attributable to the coverage converted will run from the date of the original policy. If the new policy includes additional coverage for which evidence of insurability was given, new incontestability and suicide provisions may apply to that coverage.

## G.   DEATH BENEFIT PROCEEDS

(1)    The policy shall describe how the death benefit proceeds are determined and shall describe all death benefit options available under the policy.

(2)    The policy shall contain a provision for the payment of interest on the death benefit, as follows:

    (a)    Interest shall accrue and be payable from the date of death.

    (b)    Interest shall accrue at the rate or rates applicable to the policy for funds left on deposit or, if the company has not established a rate for funds left on deposit, at the Two Year Treasury Constant Maturity Rate as published by the Federal Reserve. In determining the effective annual rate or rates, the company shall use the rate in effect on the date of death.

    (c)    Interest shall accrue at the effective annual rate determined in Item (b) above, plus additional interest at a rate of 10% annually beginning with the date that is 31 calendar days from the latest of Items (i), (ii) and (iii) to the date the claim is paid, where it is:

        (i)    The date that due proof of death is received by the company;

        (ii)    The date the company receives sufficient information to determine its liability, the extent of the liability, and the appropriate payee legally entitled to the proceeds; and

Date: 8/27/08
**Adopted by the IIPRC**

    (iii)    The date that legal impediments to payment of proceeds that depend on the action of parties other than the company are resolved and sufficient evidence of the same is provided to the company. Legal impediments to payment include, but are not limited to (a) the establishment of guardianships and conservatorships; (b) the appointment and qualification of trustees, executors and administrators; and (c) the submission of information required to satisfy a state and federal reporting requirements.

(3)    The death benefit proceeds paid shall be at least equal to the death benefit of the policy and any riders that are payable, plus any dividend values in the policy at the time of death, less any indebtedness and plus or minus any premium adjustments with interest. If death occurs during a period for which premium has been paid, the company shall add to the policy proceeds a refund of any premium actually paid for any period beyond the end of the policy month.

(4)    The policy may require that due proof of the death of the insured will consist of a certified copy of the death certificate of the insured, or other lawful evidence providing equivalent information, and proof of the claimant's interest in the proceeds.

**H.    DEPENDENT AND FAMILY MEMBER COVERAGE**

(1)    The policy may provide coverage for dependents and family members. If the policy provides such coverage:

    (a)    The policy shall comply with the applicable state law where the policy is delivered or issued for delivery, with respect to the coverage and benefits available to a person who is in a legally-sanctioned domestic partnership or civil union and to their families, or available to a person who is in a legally-sanctioned marriage with the insured and to their families; and

    (b)    Nothing in this provision shall be construed as requiring any company to provide coverage or benefits to any person who is in a domestic partnership, civil union or marriage or to their families in a state where such relationships are not legally recognized.

**I.    ENTIRE CONTRACT**

(1)    The policy shall contain a provision regarding what constitutes the entire contract between the company and the owner. No document may be included by reference.

(2)    All statements made by the applicant for the issuance, reinstatement or renewal of a policy shall, in the absence of fraud, be deemed representations and not warranties.

(3)    If the application is to be a part of the policy, the entire contract provision shall state that the application is a part of the contract.

© IIPRC

Date: 8/27/08
**Adopted by the IIPRC**

**Drafting Note:**  These standards are modified, as required or permitted by law, to enable fraternals to implement their respective articles and bylaws.  See Appendix B.

## J.    EXCLUSIONS

(1)    Any exclusion applied to the death benefit of the policy, except for accidental death benefits, shall be limited to the following:

(a)    War

(i)    If in the application the proposed insured represents that he or she is a member of the military, military reserves, or the National Guard, whether active or inactive, risk of death as a result of war or any act related to military service shall not be excluded from the death benefit of the policy.

(ii)    Other than as described in (i) above, risk of death as a result of war or act of war may be excluded from the death benefit of the policy under the following conditions:

(A)    As a result of war or act of war, if the cause of death occurs while the insured is serving in the military, naval or air forces of any country, combination of countries or international organization, provided such death occurs while in such forces or within six months after termination of service in such forces; or

(B)    As a result of the special hazards incident to service in the military, naval or air forces of any country, combination of countries or international organization, if the cause of death occurs while the insured is serving in such forces and is outside the home area, provided such death occurs outside the home area or within six months after the insured's return to the home area or area in such forces or within six months after the termination of service in such forces, whichever is earlier.

(iii)    Regarding non-combatant civilian exclusions, risk of death may be excluded under the following conditions:

(A)    As a result of war or an act of war while the insured is serving in any civilian non-combatant unit serving with such forces, provided such death occurs while serving in such units or within six months after termination of service in such units, whichever is earlier.

(B)    As a result of the special hazards incident to service in any civilian non-combatant unit serving with such forces, if the cause of death occurs while the insured is serving in such units and is outside the home area, provided such death occurs outside the home area or within six months after the insured's return to the home area while serving in such units or within six months after the termination of service in such units, whichever is earlier.

© IIPRC

11

Date: 8/27/08
Adopted by the IIPRC

(iv)    Regarding civilian exclusions, risk of death may be excluded under the following conditions:

(A)    As a result of war or an act of war, within two years from the date of issue of the policy, while the insured is not serving in such forces or units, if the cause of death occurs while the insured is outside the home area, provided such death occurs outside the home area or within six months after the insured's return to the home area.

(v)    "Home area" is defined to include at least the 50 states of the United States and its territories, the District of Columbia and Canada. "War" includes, but is not limited to, declared war, and armed aggression by one or more countries resisted on orders of any other country, combination of countries or international organization. "Act of war" means any act peculiar to military, naval or air operations in time of war.

(b)    Avocation, Aviation, Occupation, Foreign Travel and Foreign Residency:

The policy may exclude from coverage death due to a specific avocation, aviation, occupation, foreign travel or foreign residency. The exclusion may be included in the policy, or may be added by rider, endorsement or amendment attached to the policy on or after the policy's date of issue. The exclusion shall be based on information disclosed by the proposed insured in the application for the policy, or identified for the proposed insured during the underwriting process of such application. The standards applicable to such exclusions are included in the Standards for Forms Used to Exclude Policy Coverage Based on the Underwriting Process, and are subject to the applicable law in the state where the policy is delivered or issued for delivery.

(2)    Any amount payable as a result of death from an excluded act shall be at least equal to the greater of the gross premiums paid for the policy or the policy reserve, each adjusted for dividend values, loans, partial withdrawals and surrenders.

(3)    The policy may not exclude from coverage death due to any specific medical condition.

### K.    GRACE PERIOD

(1)    The policy shall contain a grace period provision and include the conditions of the provision.

(2)    A minimum of 31-day grace period shall be provided for the payment of any premium due except the first.

(3)    The coverage shall continue in force during the grace period.

(4)    The policy may provide that if the insured dies during the grace period the overdue premium will be deducted in any settlement under the policy. Interest cannot be added to any overdue premium.

© IIPRC

Date: 8/27/08
Adopted by the IIPRC

(5)    The company may not require that the premium be received within the grace period. The owner shall have the entire grace period within which to remit payment. Any payments sent by U.S. mail shall be postmarked within the grace period.

**L.    INCONTESTABILITY**

(1)    The policy shall contain an incontestability provision and include the conditions of the provision.

(2)    The contestable period shall be no greater than two years from the date of issue during the lifetime of the insured.

(3)    The contract may allow a separate contestable period no greater than two years after the date of any change requiring underwriting. The contest shall be limited to the change and the statements provided for the change.

(4)    Coverage may only be contested based on a statement contained in an application made a part of the contract. If the company expects to rely on an application to contest the policy, the company shall attach to or endorse the application as part of the policy. The statement on which the contest is based shall be material to the risk accepted or the hazard assumed by the company.

(5)    The policy may only include the following exceptions to the incontestability provision:

    (a)    Non-payment of premium;

    (b)    At the option of the company, provisions related to benefits in the event of total and permanent disability and provisions related to accidental death benefit coverage; and

    (c)    Fraud in the procurement of the policy, when permitted by applicable law in the state where the policy is delivered or issued for delivery.

(6)    A preliminary term coverage to precede another plan of insurance may contain incontestability provisions and the successor plan shall compute the time period from the date of issue of the preliminary term coverage.

(7)    Policy forms shall not contain an incontestability provision that excludes the riders that may be attached to the form unless those riders contain their own incontestability provisions.

(8)    A policy that is reinstated may be contested in accordance with Paragraph (6) of the Reinstatement section.

**M.    LOANS**

(1)    A policy that develops cash value may provide for a loan provision.

**Drafting Note:** "May" is acceptable since loans are not required by statute for term plans. However, the provision would be mandatory for permanent life plans.

© IIPRC

13

Date: 8/27/08
**Adopted by the IIPRC**

(2)    The policy shall contain the conditions of a loan, if loans are available, including:

    (a)    A statement shall be included that the policy shall be the sole security of the loan.

    (b)    The loan value shall be equal to the cash value at the end of the current policy year, plus the cash value of any dividend additions. The owner has the option to take less than the loan value, subject to a reasonable company minimum loan requirement.

    (c)    The policy shall describe the loan interest rate. The loan interest rate, including any added administrative fees associated with the loan, shall be at a maximum fixed annual rate of 8% in arrears or a variable rate determined in accordance with the NAIC Model Policy Loan Interest Rate Bill, model #590. The company may not charge any additional fees or expenses for the loan.

    (d)    The policy may provide that if interest on any indebtedness is not paid when due it shall be added to the existing indebtedness and shall bear interest at a rate no greater than the loan rate.

    (e)    The policy may provide that existing indebtedness, including any due and accrued interest, and any unpaid premiums to the end of the current policy year may be deducted from the loan value or the proceeds of the loan. The policy may also provide that interest will be collected in advance to the end of the current policy year.

    (f)    The policy shall permit repayment of the loan and describe any conditions related thereto.

    (g)    The policy shall describe the effect of outstanding loans on the death benefit, cash value and maturity value.

    (h)    The policy may provide that if and when the total indebtedness including interest due and accrued equals or exceeds the cash value of the policy plus the cash value of any dividend additions then the policy shall terminate, but not until at least 30 days' advance notice of termination shall have been mailed to the owner and any assignee of record. Upon termination any dividend accumulations shall be paid to the owner.

(3)    The policy shall contain a statement that the company reserves the right to defer the payment of any loan for six months after application for the loan is received by the company except for any loan made to pay premiums due to the company.

(4)    If the policy allows for an automatic premium loan, the policy shall state that the automatic premium loan is subject to owner election. The policy shall be clear in describing the premium mode to be loaned automatically, and shall state what shall occur if the loan value available is insufficient for the designated premium mode.

## N.    MISSTATEMENT OF AGE OR SEX

(1)    The policy shall contain a misstatement of age provision or, if the policy is written on a sex distinct basis, a misstatement of age or sex provision, providing that the amount payable or death

© IIPRC

Date: 8/27/08
Adopted by the IIPRC

benefit shall be such as the most recent premium paid would have purchased at the correct age or the correct age and sex.

(2)    If dependent or family member coverage is part of the policy, the provision may refer to an adjustment of the duration of the benefits.

(3)    If more than one life is insured, the misstatement provision may provide that the amount payable on death or the amount of premium payable may be adjusted due to the misstatement in the age or the age or sex, as appropriate, of any insured.

(4)    The company may not terminate coverage and refund premiums if the correct age is outside the issue age ranges of the form. A premium and benefit shall be extrapolated.

**O.    MISSTATEMENT OF SMOKING STATUS**

(1)    In lieu of the right to contest the policy based on a misstatement of smoking status, the policy may provide during the first two policy years for an adjustment due to a misstatement of smoking status, providing that the amount payable on death shall be the amount that the premium would have purchased using the correct smoking status.

**P.    NONFORFEITURE VALUES—POLICY PROVISIONS**

(1)    If the policy provides nonforfeiture benefits, the policy shall contain provisions at least as favorable to the defaulting or surrendering owner as the following:

    (a)    A provision that in the event of default of premium, the company will provide upon request no later than 60 days after the due premium date, a paid-up nonforfeiture benefit on a plan stipulated in the policy, effective as of such due date. In lieu of the stipulated paid-up nonforfeiture benefit, the company may substitute, upon proper request not later than 60 days after the due date of the premium in default, an actuarially equivalent alternative paid-up nonforfeiture benefit that provides a greater amount or longer period of death benefits, or if applicable, a greater amount or earlier payment of endowment benefits.

    (b)    A provision that upon surrender of the policy within 60 days after the due date of any premium payment in default after premiums have been paid for at least three full years the company will pay, in lieu of any paid-up nonforfeiture benefit, a cash value.

    (c)    A provision that a specified paid-up nonforfeiture benefit shall become effective unless the person entitled to make such election elects another available option no later than 60 days after the due date of the premium in default.

    (d)    A provision that if the policy becomes paid up by completion of all premium payments or is continued under any paid-up nonforfeiture benefit which became effective on or after the third policy anniversary the company will pay upon policy surrender within 30 days after any policy anniversary, a cash value.

© IIPRC

15

Date: 8/27/08
Adopted by the IIPRC

(e)     A statement of the mortality table and interest rate used in calculating the cash values and the paid-up nonforfeiture benefits available under the policy, together with a table showing the cash value, if any, and paid-up nonforfeiture benefits, if any, available under the policy on each policy anniversary either during the first 20 years or during the term of the policy, whichever is shorter, such values and benefits to be calculated upon the assumption that there are no dividends or paid-up additions credited to the policy and that there is no indebtedness to the company on the policy. The statement of the mortality table shall be complete (e.g. whether sex distinct or unisex, smoker or nonsmoker, or age nearest birthday or age last birthday).

(f)     A statement that any cash values and paid-up nonforfeiture benefits available under the policy are not less than the minimum values and benefits required by or pursuant to the NAIC Standard Nonforfeiture Law for Life Insurance, model #808.

(g)     A detailed statement of the method of computation of the values and benefits or a statement that such method of computation has been filed with the Interstate Insurance Product Regulation Commission.

(h)     An explanation of the manner in which the cash values and the paid-up nonforfeiture benefits are altered by the existence of any paid-up additions credited to the policy or any indebtedness to the company on the policy.

(i)     A statement of the method to be used in calculating the cash value and paid-up nonforfeiture benefit available under the policy on any policy anniversary beyond the last anniversary for which such values and benefits are consecutively shown in the policy.

(j)     A statement that the company reserves the right to defer the payment of any cash surrender value for six months after demand with surrender of the policy.

(2)     A provision that the owner may surrender the policy for the cash surrender value at any time, and if surrendered within 30 days following a policy anniversary that the value available shall not be less than the anniversary value.

(3)     A provision that any cash surrender value and any paid up nonforfeiture benefit, available under the policy in the event of default in premium payment due at any time other than on a policy anniversary, shall be calculated with allowance for lapse of time and the payment of fractional premiums beyond the last preceding policy anniversary.

## Q.    OWNERSHIP

(1)     The policy shall contain an ownership provision. The provision shall describe the procedures for designating or changing the owner and indicating when the designation is effective. The policy shall not include any restriction on change of owner other than for purposes of satisfying applicable laws or regulations.

© IIPRC

16

Date: 8/27/08
**Adopted by the IIPRC**

(2)     The policy shall state that changes in owner designation, unless otherwise specified by the owner, shall take effect on the date the notice of change is signed by the owner, subject to any payments made or actions taken by the company prior to receipt of this notice.

(3)     The policy shall describe how contingent owner and joint owner provisions operate, if being made available.

**Drafting Note:** Restrictions on change of owner in policy forms such as right of first refusal or first offer provisions are prohibited by Item (1).

## R.     PARTICIPATING POLICY

A policy may be non-participating; however, if the policy is participating in the divisible surplus of the company, then the following shall apply:

(1)     The conditions of the participation shall be included in the policy.

(2)     The policy shall provide that the company shall annually ascertain and apportion any divisible surplus, beginning not later than the third year.

(3)     The policy shall provide that the owner may receive any dividend payment in cash or as a reduction in premium payments. Other dividend options may be provided in the policy.

(4)     The policy shall provide for an automatic dividend option if more than one dividend option is provided. If the policy provides for more than one dividend option, the policy shall identify the automatic option.

(5)     Any additional supplemental benefits attached to a participating policy, whether or not considered in determining surplus earnings, may not be specially labeled or described as non-participating.

(6)     Whenever one-year term insurance is purchased by dividends in connection with a policy, the policy shall provide for the return of the unearned charge in the event of termination of the policy (other than by death) prior to the expiration of such one year term insurance.

(7)     The policy shall state that any dividend accumulations and the cash value of any paid up dividend additions shall be paid to the owner upon termination of the policy.

## S.     PAYMENT OF PREMIUM

(1)     There shall be a provision for payment of premiums, a listing of premiums for all years, and any policy fees shall be identified.

(2)     The policy shall provide for payment of the initial premium in advance of the policy becoming effective.

Date: 8/27/08
**Adopted by the IIPRC**

## T.    REINSTATEMENT

(1)    The policy shall contain a reinstatement of the policy provision with respect to policies for which the grace period has elapsed for nonpayment of premiums provision if the policy has not been surrendered or the nonforfeiture benefit period has not expired and include the conditions of the reinstatement.

(2)    The condition for reinstatement shall include the maximum period during which reinstatement is allowed, which shall not be less than three years from the date of lapse.

(3)    Evidence of insurability may be required.

(4)    Payment of all overdue premiums may be required unless:

    (a)    The company requires evidence of insurability;

    (b)    The premium for the reinstated policy is comparable to that of a policy issued at the insured's attained age; and

    (c)    There has been no nonforfeiture benefit insurance coverage in place during the reinstatement period.

    If (a), (b) and (c) are all true, payment of no more than one month's premium to cover the grace period may be required. Interest may be charged on overdue premiums at a rate not exceeding 6%.

(5)    If applicable, repayment/reinstatement of any policy loan may be required with interest rates not exceeding the interest rates as permitted in the loan provision of the policy.

(6)    With respect to any reinstated policy, the following applies:

    (a)    With respect to statements made in an application for reinstatement, the policy is incontestable after it has been in force during the insured's lifetime for two years beginning with the day of reinstatement. The contestable period is based only on statements in the reinstatement application, unless the original contestable period has not yet expired. The reinstated policy may include an exception to the incontestability provision for fraud in the procurement of the reinstated policy when permitted by applicable law in the state where the policy is delivered or issued for delivery.

    (b)    The suicide exclusion shall not exceed two years from the day of reinstatement.

    (c)    If a policy contains a reinstatement provision or other policy provision that references the subject matter of Paragraph (6)(a) and/or (6)(b), the policy references shall be consistent with (6)(a) and/or (6)(b).

Date: 8/27/08
Adopted by the IIPRC

**U.      RENEWABILITY**

(1)      A policy that is renewable shall state the conditions, limitations or restrictions of renewal. The company may not require evidence of insurability upon renewal.

(2)      The policy shall contain the schedule of guaranteed premiums for the renewal periods.

(3)      Renewal premium shall be subject to a grace period.

**V.      RIGHT TO EXAMINE POLICY**

(1)      The Right to Examine Policy provision appearing on the cover page or that is visible without opening the policy shall include the following:

    (a)      (i)      If the policy is not a replacement policy, a period of ten days beginning on the date the policy is received by the owner, and at the discretion of the company a longer period may be filed; or

        (ii)      If the policy is a replacement policy, a minimum of thirty days beginning on the date the policy is received by the owner, or any longer period as may be required by applicable law in the state where the policy is delivered or issued for delivery;

    (b)      A requirement for the return of the policy to the company or an agent of the company. Policy is considered void from the beginning and the parties shall be in the same position as if no policy had been issued; and

    (c)      A refund of all premiums paid, including any fees or charges, if the policy is returned.

**W.      SETTLEMENT OPTIONS**

(1)      The policy shall contain a description of each type and form of settlement option provided in the policy. The guaranteed interest rate and mortality table, if applicable, being utilized for a designated settlement option shall be identified in the policy. In lieu of the interest rate and mortality table disclosure, complete tables of guaranteed settlement option amounts may be included in the policy.

(2)      The policy shall contain a provision stating that the annuity benefits at the time of their commencement will not be less than those that would be provided by the application of the cash surrender value to purchase a single consideration immediate annuity contract at purchase rates offered by the company at the time to the same class of annuitants whether the annuity benefits are payable in fixed or variable amounts or both.

**X.      SUICIDE**

(1)      The policy may provide for a suicide exclusion, which may include the phrase "sane or insane."

(2)      The suicide exclusion shall include the conditions of the provision.

© IIPRC

Date: 8/27/08
Adopted by the IIPRC

(3)     The suicide exclusion period shall not exceed two years from the date of issue of the policy.

(4)     At a minimum, a refund of all premiums paid, less dividends paid and any indebtedness, shall be paid by the company in the event of death by suicide during the suicide exclusion period.

## § 4     ADDITIONAL STANDARDS FOR FRATERNAL BENEFIT SOCIETIES

The policy may include the following provisions:

### A.     MEMBERSHIP

(1)     The certificate may include a provision stating that the insured and/or owner is a member and that the form that has been issued to evidence coverage is a certificate of membership and insurance.

### B.     MAINTENANCE OF SOLVENCY

(1)     The certificate may include a provision setting forth the legal rights and obligations in the case of a fraternal's financial impairment.

## § 5     SPECIALIZED PRODUCTS/MARKETING

### A.     INDETERMINATE PREMIUM POLICY

(1)     ADDITIONAL SUBMISSION REQUIREMENTS

The filing for an indeterminate premium policy shall include:

(a)     A certification that the same initial rating classes will apply when premiums are adjusted under the premium change provision; and

(b)     Guaranteed periods for current premium.

(2)     POLICY PROVISIONS

(a)     The brief description shall disclose that the policy is an indeterminate premium policy or that the policy contains a change of premiums provision.

(b)     The policy shall contain a complete table of guaranteed maximum premiums. The premiums shall be annual premiums or the premiums for the mode elected by the owner.

(c)     The policy shall disclose on the specifications page the amount and period of time for which the current and/or initial premium is guaranteed.

Date: 8/27/08
Adopted by the IIPRC

    (d)    Any premium shown on the specifications page or in the policy that is subject to change in accordance with the premium change provision shall be so noted on the specifications page or in the proximity of the premium.

    (e)    The policy shall contain a premium change provision. The provision shall provide that any premiums after the initial premium may be changed, subject to the table of guaranteed maximum premiums. The provision shall disclose the frequency of premium change and that any change will be by class. If any current scale premium is shown on the specifications page or in the policy, the nonguaranteed nature of the premium shall be noted in the proximity of the current scale premium.

    (f)    The premium change provision shall state that the adjustment in premium is based on future anticipated or emerging experience. The provision shall specify the experience factors upon which any indeterminate premiums are adjusted. "Experience factors" means a factor experienced by the company that is variable in nature and impacts the profitability of the policy. Depending on the policy design, experience factors may include, but are not limited to, investment earnings, mortality, persistency, taxes and expenses.

    (g)    The premium change provision shall disclose the effect of the provision on any attached riders.

(3)    VARIABILITY OF INFORMATION

    (a)    The policy may provide for various guaranteed periods for current premiums that may be identified as a variable item on the specifications page. The variability of this item is subject the Paragraph (5) of the general Variability of Information section.

**B.    POLICY PROVIDING FOR PAYMENT OF PROCEEDS IN INSTALLMENTS**

(1)    Death benefit shall always be available in a lump sum and installments are optional. If policy proceeds are paid in installments that are determinable prior to the policy maturity, the policy shall contain a table showing the amount of the guaranteed installments.

(2)    A policy that provides installments may provide the owner with the right to commute the installments. If commutation is permitted, the commutation basis shall be in the policy.

**C.    RE-ENTRY OR REQUALIFICATION TERM POLICY**

(1)    The brief description shall disclose that the policy contains a provision for re-entry or re-qualification of premium.

(2)    The policy shall not provide that the suicide exclusion will be reinstated upon re-entry or re-qualification.

(3)    The incontestability provision on re-entry or re-qualification shall provide that if a material misrepresentation is made in the re-qualification application, the amount of insurance that may

© IIPRC

Date: 8/27/08
**Adopted by the IIPRC**

be contested is limited to the difference between the amount purchased by the regular premium rate for the policy and the amount purchased by the re-entry or re-qualification premium rate.

(4)     If the policy contains a table of premiums for re-entry or re-qualification, the table shall be clearly identified as such.

© IIPRC

22

Date: 8/27/08
Adopted by the IIPRC

**Appendix A**
**Flesch Methodology**

The following measuring method shall be used in determining the Flesch score:

(1)     For policy forms containing 10,000 words or less of text, the entire form shall be analyzed. For policy forms containing more than 10,000 words, the readability of two, 200-word samples per page may be analyzed instead of the entire form. The sample shall be separated by at least 20 printed lines.

(2)     The number of words and sentences in the text shall be counted and the total number of words divided by the total number of sentences. The figure obtained shall be multiplied by a factor of 1.015.

(3)     The total number of syllables shall be counted and divided by the total number of words. The figure obtained shall be multiplied by a factor of 84.6.

(4)     The sum of the figures computed under (2) and (3) subtracted from 206.835 equals the Flesch reading ease score for the policy form.

(5)     For purposes of (2), (3), and (4), the following procedures shall be used:

   (a)     A contraction, hyphenated word, or numbers and letters, when separated by spaces, shall be counted as one word;

   (b)     A unit of words ending with a period, semicolon, or colon, but excluding headings and captions, shall be counted as a sentence; and

   (c)     A syllable means a unit of spoken language consisting of one or more letters of a word as divided by an accepted dictionary. Where the dictionary shows two or more equally acceptable pronunciations of a word, the pronunciation containing fewer syllables may be used.

(6)     The term "text" as used in this section shall include all printed matter except the following:

   (a)     The name and address of the company; the name, number or title of the policy; the table of contents or index; captions and sub-captions; specifications pages, schedules or tables; and;

   (b)     Any policy language which is drafted to conform to the requirements of any federal law or regulation; any policy language required by any collectively bargained agreement; any medical terminology; any words which are defined in the policy; and any policy language required by law or regulation; provided, however, the company identifies the language or terminology excepted by the paragraph and certifies, in writing, that the language or terminology is entitled to be excepted by this paragraph.

(7)     At the option of the company, riders, endorsements, applications and other forms made a part of the policy may be scored as separate forms or as part of the policy with which they may be used.

© IIPRC

23

Date: 8/27/08
Adopted by the IIPRC

**Appendix B**
**Fraternal Benefit Societies**

Fraternal Benefit Societies ("fraternals") are subject to separate fraternal codes in all jurisdictions due to their unique structure, operations and legal obligations. The Drafting Notes included under the Scope, AMENDMENTS, ARBITRATION and ENTIRE CONTRACT standards, the section entitled ADDITIONAL STANDARDS FOR FRATERNAL BENEFIT SOCIETIES, and Appendix B are included in the standards to allow fraternals to experience the benefits of participating in the single point of filing and review process that the Interstate Insurance Product Regulation Commission offers, without jeopardizing their ability to meet their unique obligations and to operate as required or permitted by law.

By law, a fraternal is defined by five basic elements:

1.      One without capital stock;

2.      One conducted solely for the benefit of its members and their beneficiaries by providing life, health and annuity benefits and by operating one or more social, educational, charitable, patriotic, or religious purposes for the benefit of members and others;

3.      One that is a benevolent and charitable institution and not for profit;

4.      One operated on a lodge system that may carry out charitable and other activities; and

5.      One that has a representative form of government with a governing body and direct election of its members.

The laws governing fraternals impact the standards in several ways. Fraternals are required by law to issue insurance contracts that incorporate the laws of the Society and the application for membership. Thus, the contract must consist not only of the policy or certificate issued, and the application for insurance, but also the application for membership and the articles and bylaws. Further, the laws governing fraternals require or permit that the articles and bylaws address the structure of lodges, membership requirements, form of governance, grievance procedures, and eligible beneficiaries. Any amendments to the articles or bylaws made after issuance of a certificate must be applied consistently to all members retroactively. However, no amendment shall eliminate or reduce contractual benefits.

By law, fraternals are membership organizations. Because of this, the law refers to the insurance forms issued to members of a fraternal as "certificates" or "certificates of membership and insurance". Further, due to the membership requirements, fraternal certificates often include a provision stating that the insured and/or owner is a member and that the form that has been issued to evidence coverage is a certificate of membership and insurance. In addition, fraternal certificates may include a Maintenance of Solvency provision setting forth the legal rights and obligations in the case of a fraternal's financial impairment.

© IIPRC

24