## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| NEW YORK LIFE INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>    V.<br><br>MASSIEL ORTIZ and JULIA KLAH,<br><br>    Defendants. | C.A. No. 14-074/S |

## PLAINTIFF NEW YORK LIFE INSURANCE COMPANY'S
## RESPONSE TO DEFENDANT MASSIEL ORTIZ'S OBJECTION
## TO THE COURT'S REPORT AND RECOMMENDATION

Plaintiff New York Life Insurance Company ("New York Life") responds, pursuant to Fed. R. Civ. P. 72 and DRI LR Cv 72, to the Defendant Massiel Ortiz's "Objection to the Court's October 20, 2014 Report and Recommendation."  [Dkt #41].

New York Life files herewith a supporting memorandum of law and requests a hearing.

                                                       */s/ Brooks R. Magratten*
                                                     Brooks R. Magratten, Esq. (#3585)
                                                     Nicholas P. Brown, Esq. (#8510)
                                                     PIERCE ATWOOD LLP
                                                     72 Pine Street
                                                     Providence, RI 02903
                                                     (401) 490-3422 Tel
                                                     (401) 588- 5166 Fax
                                                     bmagratten@pierceatwood.com
                                                     nbrown@pierceatwood.com

                                                     *Attorneys for Defendant*
                                                     *New York Life Insurance Company*

Date:  November 20, 2014

## CERTIFICATE OF SERVICE

      I certify that the within document was electronically filed with the clerk of the court on November 20, 2014, and that it is available for viewing and downloading from the Court's ECF system.  Service by electronic means has been effectuated on all counsel of record.

                                      */s/ Brooks R. Magratten*

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| NEW YORK LIFE INSURANCE COMPANY,<br><br>　　　Plaintiff,<br><br>　　　V.<br><br>MASSIEL ORTIZ and JULIA KLAH,<br><br>　　　Defendants. | C.A. No. 14-074/S |

**MEMORANDUM IN SUPPORT OF
PLAINTIFF NEW YORK LIFE INSURANCE COMPANY'S
RESPONSE TO DEFENDANT MASSIEL ORTIZ'S OBJECTION
TO THE COURT'S REPORT AND RECOMMENDATION**

Plaintiff New York Life Insurance Company ("New York Life") responds, pursuant to Fed. R. Civ. P. 72 and DRI LR Cv 72, to the Defendant Massiel Ortiz's "Objection to the Court's October 20, 2014 Report and Recommendation."  [Dkt #41].

　　　I.　　　The Court Did Not Misconstrue G.L.R.I § 27-4-10.

Ms. Ortiz's objection is premised on the assumption that New York Life is attempting to rescind coverage under G.L.R.I. § 27-4-10.  Ms. Ortiz misses the point.  New York Life is not seeking to rescind coverage.  To the contrary, having completed its investigation, it has disclaimed any interest in the Death Benefit and declared itself "ready, willing and able" to disburse the Death Benefit."  [Dkt#1, ¶ 31].

Ms. Ortiz's position has evolved over time.  Initially she opposed New York Life's Motion for Interpleader Relief contending that: 1) New York Life had no cause to investigate Mr. Kaydea's death or Ms. Ortiz's claim; and 2) the Court should ignore Ms. Klah's cross-claim and direct payment of the Death Benefit to her, alone and immediately.  [Dkt #22, pp. 4 - 8].  At

oral argument, Ms. Ortiz's counsel suggested that three months was a reasonable time for New York Life to conduct an investigation: "[I]t would seem to me that three months for an unsolved murder is long enough for an insurance company to say we don't know what to do in this instance." (Transcript [Dkt #40], p. 27).  Ms. Ortiz now again suggests that it was unreasonable for New York Life to conduct any investigation of her claim or of Mr. Kaydea's death and should 1) have paid her the Death Benefit or 2) commenced the interpleader action immediately. Ortiz Objection [Dkt #41], p. 6.

Ms. Ortiz, however, ignores substantial case law recognizing that insurers have not only the right, but duty, to properly investigate claims and representations in the policy application when a claim falls within the contestability period.  "If payment on a policy becomes due during the contestability period, the insurance company may undertake an investigation." *Ressler v. General American life Ins. Co.,* 561 F.Supp. 2d 691, 695 (E.D. Tex. 2007).  "The purpose of incontestability clauses is to allow the insurer 'a reasonable opportunity to investigate the statements made by the applicant in processing the policy' …. Investigations during the contestability period are routine." *American General Life Ins. Co. v. Broughton,* 2008 WL 4977402, *4 (D. Idaho June 3, 2008) (internal citations omitted).

In the Report and Recommendation ("R&R"), Magistrate Judge Sullivan recognized: 1) that Mr. Kaydea's death occurred within the contestability period; 2) the insurer's legal right to conduct an investigation during the contestability period[1]; and 3) that while Ms. Ortiz disputes the characterization of New York Life's investigation as "routine," the parties do not dispute the material events comprising the investigation.  R&R, pp. 3-4, notes 4 & 5.

---

[1] Indeed the Court cited cases in which an eleven to fifteen month delay from the date of murder due to a contestability investigation did not present a barrier to interpleader relief.  *See* R&R, p. 12.

{W4579279.1}                                      2

There is no dispute as to point one. Ms. Ortiz offers no authority to counter the legal conclusion that is point two. Finally Ms. Ortiz offered no evidence, by affidavit or otherwise, to controvert the material facts of New York Life's investigation.[2]

Ms. Ortiz suggests that New York Life's investigation was limited to seeking medical records which, in the circumstances of this claim, could offer no utility to New York Life. Ms. Ortiz misrepresents the record. As the Court observed, "[i]n connection with its contestability investigation, New York Life set out to procure Mr. Kaydea's school, pharmacy, medical and criminal records." R&R, p. 4. In her objection Ms. Ortiz contends that: "It is fair to say … that any information obtained by NYL during its 'investigation' could *not* have revealed a misrepresentation that would allow NYL to avoid payment of the policy proceeds." [Dkt #41, p. 5].

Ms. Ortiz, of course, now speaks with the benefit of hindsight. At oral argument counsel for New York Life gave examples of how New York Life's contestability investigation could yield evidence supporting a policy rescission:

> "I think it would be an overstatement to say that medical records in this case would be completely irrelevant. And let's take the case, for example, that there are medical records out there which indicate that Mr. Kaydea has had a history of stab wounds, gunshot wounds, other physical conditions that might point to gang involvement, or criminal involvement…. You can envision a hypothetical, for example, where Mr. Kaydea died in a drug deal gone bad, and one of the questions, medical questions is do you have any history of drug abuse, have you taken any illicit medication – any illicit drugs, and he said no. Medical records intending to show a history of drug abuse could be quite relevant to this, and support a policy rescission. So I think it's an overstatement to say that medical records here, the search for medical records was completely immaterial."

Transcript, [Dkt #40], pp. 5, 47-48.

---

[2] The material facts regarding New York Life's investigation appear as paragraphs 4-24 in its Statement of Undisputed Facts. [Dkt #18]. Ms. Ortiz contested only paragraph 9, and then only to dispute the characterization of New York Life's investigation as "routine." [Dkt #25]. As the Court noted, Ms. Ortiz has been in possession of all non-privileged documents in New York Life's claim file. R&R, p. 18.

The Court similarly did not view New York Life's contestability investigation as a meaningless exercise:

> "And it seems to me, and Mr. Magratten has suggested a couple of hypotheticals, and I can think of about 50 more, that there are lots of reasons why someone whose death certificate says, you know, murder, might nevertheless present a policy that's void and that the kind of documentation that the insurance company is looking for are not just standard in every contestability investigation but also are the kinds of documents that might very well expose either a health issue or something that's reflected in notes, that demonstrates some voidability issue that is what is the focus of the insurance company…."

*Id.*, p. 30.

Ms. Ortiz even suggests that New York Life lied to her that the only reason the Death Benefit was not immediately paid to her was due to her failure to procure medical records. Ortiz Objection [Dkt #41], p. 6. The record lends no support for this contention. A review of New York Life's correspondence to Ms. Ortiz during the relevant period shows that it repeatedly advised her only that its investigation as ongoing and requested her assistance in obtaining records. *See* Affidavit of Christine Navin [Dkt #17], Exhibit A, pp. 81, 135, 150, 162 and 170.

Ms. Ortiz contends the Court "incorrectly stated that 'Ms. Ortiz does not dispute that the contestability investigation was appropriate at the outset (so that the initial request for medical records was not wrongful.)'" Ortiz Objection [Dkt #41], p. 7. She goes on to say she disputes "both the scope and character of NYL's investigation." Id.

To be precise, Ms. Ortiz never disputed the operative facts of New York Life's investigation. *See* note 2, supra. She contends, in her various counterclaims, that New York Life's investigation evolved into a fraud perpetrated against her. But, as the Court correctly

observed, "[f]atal to this theory is the lack of any concrete facts to support it." R&R, p. 18. Indeed Ms. Ortiz has never been able to point to a misrepresentation made to her in this record.[3]

Ms. Ortiz suggests that New York Life was required to identify at the outset of its investigation its theory of rescission and the evidence needed to support such a theory. That is not how investigations work. It is neither reasonable nor realistic to expect any insurer to commence a contestability investigation only when the misrepresentation in a policy application is already known.

II.  Ms. Ortiz's Counterclaims Are Based on New York Life's Failure to Pay Her Immediately and Alone

The Court recognized *Prudential Insurance Co. v. Hovis*, 553 F.3d 258 (3rd Cir. 2009), as a "foundational decision," followed in the First Circuit and elsewhere. R&R, p. 15. Ms. Ortiz does not challenge *Hovis*. Instead she now attempts to recast her counterclaims into an attack on New York Life's handling of her claim generally. Ortiz Objection [Dkt #41], pp. 8-9.

The Court, however, correctly characterized Counts I, II, V and VII as claims grounded in New York Life's alleged failure to pay the Death Benefit to Ms. Ortiz alone and immediately. It noted that these claims "all fall squarely within the zone that *Hovis* has carved out as inconsistent with interpleader relief." R&R, p. 16.

The Court also struck Count III (negligence) because "the undisputed facts establish[ed] no bad faith or breach of duty of care in New York Life's handling of its contestability

---

[3] Ms. Ortiz claims that New York Life misrepresented that "the *only* impediment to paying her claim was a lack of medical records" and that "once the medical records were produced, she would be paid the benefits rightfully due her." Ortiz Objection [Dkt#41], p. 10 (emphasis added). Ms. Ortiz stretches the record. The cited support is Ms. Ortiz's Statement of Additional Undisputed Facts, ¶31, which states only: "Prior to filing the instant complaint, New York Life's sole stated reason for refusing to pay Ms. Ortiz the benefits due her under the Policy of Insurance was Ms. Ortiz's inability to secure Mr. Kaydea's 'medical records.'" Statement of Additional Undisputed Facts [Dkt#26], ¶31.

investigation." R&R, p. 20.  The Court correctly observed New York Life's legal right to conduct a contestability investigation and rejected Ms. Ortiz's characterization of that investigation as a wild goose chase.  *Id.* at pp. 17-18.

With respect to Count IV (misrepresentation/omission), the Court correctly observed that Ms. Ortiz failed to present "any facts to prove that New York Life committed an actionable misrepresentation or omission."  *Id.* at p. 20.  Again, there is no support in the record for the misrepresentation Ms. Ortiz claims New York Life made.  *See* p. 4 and note 3, *supra*.

Additionally, the Court correctly observed that because life insurance is regulated extensively by the Department of Business Regulation, Ms. Ortiz has no legally cognizable claim under Count VI (the Deceptive Trade Practices Act).  *Id.* at p. 20.  Ms. Ortiz does not contest this ruling.

Ms. Ortiz has identified no error in the R&R with respect to its dismissal of her counterclaims.  The R&R should therefore be adopted as an order of this Court with respect to its disposition of New York Life's Motion for Summary Judgment.

> */s/ Brooks R. Magratten*
> Brooks R. Magratten, Esq. (#3585)
> Nicholas P. Brown, Esq. (#8510)
> PIERCE ATWOOD LLP
> 72 Pine Street
> Providence, RI 02903
> (401) 490-3422 Tel
> (401) 588- 5166 Fax
> bmagratten@pierceatwood.com
> nbrown@pierceatwood.com
>
> *Attorneys for Defendant*
> *New York Life Insurance Company*

Date:  November 20, 2014

## **CERTIFICATE OF SERVICE**

I certify that the within document was electronically filed with the clerk of the court on November 20, 2014, and that it is available for viewing and downloading from the Court's ECF system. Service by electronic means has been effectuated on all counsel of record.

                                        */s/ Brooks R. Magratten*