UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

———————————————————————— )
                                       )
NEW YORK LIFE INSURANCE COMPANY,       )
                                       )
        Plaintiff and                  )
        Counterclaim Defendant,        )
                                       )
    v.                                 )
                                       )
MASSIEL ORTIZ,                         )
                                       )
        Defendant, Counterclaim        )    C.A. No. 14-74 S
        Plaintiff, and                 )
        Cross-claim Defendant,         )
                                       )
and                                    )
                                       )
JULIA KLAH,                            )
                                       )
        Defendant and                  )
        Cross-claim Plaintiff.         )
———————————————————————— )

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, Chief Judge.

This is an interpleader action brought by Plaintiff and Counterclaim Defendant New York Life Insurance Company ("New York Life"), seeking to deposit the proceeds of a life insurance policy into the registry of this Court. Defendants are Massiel Ortiz, the insured's former girlfriend and the primary beneficiary under the policy, and Julia Klah, the insured's mother and the secondary beneficiary under the policy. New York Life filed a motion for interpleader relief (ECF No. 14) and a motion for summary judgment on Ortiz's counterclaims against it

for breach of contract, breach of the obligation of good faith and fair dealing, negligence, misrepresentation/omission, bad-faith claims settlement practices, unfair or defective consumer practices, and attorneys' fees for breach of contract (ECF No. 16.)   Magistrate Judge Patricia A. Sullivan issued a Report & Recommendation ("R&R"), in which she recommended that the motion for summary judgment be granted and that the motion for interpleader relief be granted in part and denied in part.   (R&R 25-26, ECF No. 36.)   New York Life and Ortiz have both filed objections to aspects of the R&R.   (ECF Nos. 39, 41.)

This Court hereby ADOPTS the aspects of the R&R to which no timely objection has been lodged.[1]   Additionally, with respect to

---

[1]   These aspects include Magistrate Judge Sullivan's recommendations that:   (1) New York Life is entitled to interpleader relief (R&R 12, ECF No. 36); (2) New York Life's request for attorneys' fees and that costs be denied (id. at 24-25); (3) New York Life is entitled to summary judgment on Ortiz's counterclaim for unfair and deceptive trade practices (id. at 20); (4) New York Life is entitled to injunctive relief under 28 U.S.C. § 1335 (id. at 25); and (5) the provision of the policy allowing for an additional amount of interest of 10% was not triggered in this case (id. at 23).   This last aspect requires brief elaboration.   In a document entitled "Defendant Massiel Ortiz's Cross-Objection Regarding Appropriate Interest Payable Under the Insurance Policy and R.I. Statute," Ortiz purports to lodge an objection to this aspect of the R&R. (Def.'s Resp. to Pl.'s Objection 12-15, ECF No. 43-1.)   However, this document was filed on November 17, 2014 – after the November 6, 2014 deadline for filing objections to the R&R – and Ortiz did not address this aspect of the R&R in her timely objection (ECF No. 41).   Therefore, by failing to object to this aspect of the R&R in a timely fashion, Ortiz has waived her

the aspects of the R&R to which the parties have timely objected, which this Court reviews de novo, see 28 U.S.C. § 636(b)(1), this Court ADOPTS IN PART and REJECTS IN PART the R&R. For the reasons discussed below, this Court ADOPTS the R&R's recommendation that New York Life is entitled to summary judgment on Ortiz's counterclaims for breach of contract, breach of the obligation of good faith and fair dealing, negligence, bad-faith claims settlement practices, and attorneys' fees for breach of contract, but REJECTS the R&R's recommendation that New York Life is entitled to summary judgment on Ortiz's misrepresentation counterclaim. Accordingly, New York Life's motion for summary judgment is GRANTED IN PART and DENIED IN PART. Finally, this Court reserves ruling on the R&R's recommendation that R.I. Gen. Laws § 27-4-26 governs the rate of interest that New York Life must pay on the policy proceeds until expiration of the period for supplemental briefing set forth herein. New York Life's motion for interpleader relief is GRANTED IN PART and DENIED IN PART.

I.   New York Life's Motion for Summary Judgment

The R&R provides a robust discussion of the factual and procedural history of this case. This Court will set forth only

---

objection, and this Court will not consider it. See LR Cv 72(d)(1).

those facts necessary to put Magistrate Judge Sullivan's treatment of Ortiz's counterclaims (and Ortiz's objections to the R&R's consideration of the counterclaims) into proper context.[2] Less than four months after New York Life issued Shad G. Kaydea, Jr. a life insurance policy, his body was found burning in a cemetery in Cranston, Rhode Island on March 20, 2013. (Pl.'s Statement of Undisputed Facts ("SUF") ¶¶ 1-2, 5, ECF No. 18.) Police determined that Kaydea was murdered, and an investigation ensued. (Id. at ¶ 5.) As part of that investigation, authorities contacted New York Life about the policy. (Id. at ¶ 6.) Sometime during mid-May 2013, police informed New York Life that "the family members and beneficiary [i.e. Ortiz] [were] listed as people of interest" in the investigation. (Id. at ¶ 12.) Police also requested to be informed if and when New York Life paid the policy proceeds to a beneficiary. (Id.) In January 2014, police informed New York Life that the homicide investigation was still active and that no one could be ruled out as a suspect. (Id. at ¶ 23.)

Meanwhile, on April 29, 2013, Ortiz – the primary beneficiary under the policy – submitted a claim for the

---

[2] Given the posture of this case, the facts must be viewed in the light most favorable to Ortiz, the nonmovant, and all reasonable inferences must be drawn in her favor. See Torrech-Hernandez v. Gen. Elec. Co., 519 F.3d 41, 46 (1st Cir. 2008).

insurance proceeds. (Id. at ¶ 8.) Because Kaydea died within two years of the issuance of the policy, New York Life had the right to contest the policy. (Ins. Policy § 7.3, ECF No. 2-2.) On May 2, 2013, New York Life initiated a contestability investigation, and it alerted Ortiz of this investigation in a letter bearing the same date. (Pl.'s SUF ¶¶ 9-10, ECF No. 18; Def.'s Statement of Disputed Facts ¶ 9, ECF No. 25.) This letter informed Ortiz that this investigation would involve obtaining copies of Kaydea's medical records. (Pl.'s SUF ¶ 10, ECF No. 18.) Thereafter, New York Life "repeatedly informed" Ortiz that it needed Kaydea's medical records to complete the investigation. (Ortiz Aff. ¶ 13, ECF No. 21.) Despite her efforts to obtain Kaydea's medical records – which caused Ortiz to incur considerable attorneys' fees and expenses and included an unsuccessful attempt to be appointed administrator of Kaydea's estate – Ortiz was unable to do so. (Id. at ¶ 16.)

On January 8, 2014, Ortiz's counsel sent New York Life a letter in which he argued that, because Kaydea's death was the result of a homicide, Kaydea's medical records were irrelevant to New York Life's contestability investigation. (Excerpts of New York Life's Claim File, Part III, at 94, ECF No. 17-3.) Ortiz's counsel also requested that Ortiz be informed whether New York Life had any other reasons, beyond the absence of the

medical records, why it had not yet paid the policy proceeds to Ortiz. (Id. at 93.) Shortly after receiving this letter and confirming with police that no one could be ruled out as a suspect in the homicide investigation, New York Life concluded its contestability investigation and determined that the policy proceeds were payable. (Pl.'s SUF ¶¶ 23-24, ECF No. 18.)

New York Life filed this interpleader action in early February 2014, claiming that it has a reasonable fear of being subjected to multiple litigation or liability because Ortiz may be an ineligible beneficiary under Rhode Island's Slayer Statute, R.I. Gen. Laws § 33-1.1-11(a), in the event that she is implicated in Kaydea's murder. (Compl. ¶¶ 28-30, ECF No. 1.) In that circumstance, Ortiz, even though the primary beneficiary under the policy, would not be entitled to the policy proceeds; instead, Klah, the secondary beneficiary, would be the proper payee. See R.I. Gen. Laws § 33-1.1-11(a). Prior to filing its complaint, New York Life never informed Ortiz that it believed that the Slayer Statute might be applicable to this case; the sole reason given to Ortiz for the refusal to pay her the policy proceeds was her inability to secure Kaydea's medical records. (Def.'s Statement of Additional Undisputed Facts ¶¶ 30-31, ECF No. 26.) Ortiz counterclaimed against New York Life, alleging breach of contract (Count One), breach of the obligation of good

faith and fair dealing (Count Two), negligence (Count Three), "misrepresentation/omission" (Count Four), bad-faith claims settlement practices (Count Five), unfair or deceptive consumer practices (Count Six), and requesting attorneys' fees for breach of contract (Count Seven). (Answer & Countercl., ECF No. 2.)

A. Counts One, Two, Five, and Seven

Magistrate Judge Sullivan concluded that Counts One, Two, Five, and Seven were all premised upon New York Life's failure to pay Ortiz the proceeds immediately upon receipt of her claim. (R&R 16, ECF No. 36.) Relying on Prudential Ins. Co. v. Hovis, 553 F.3d 258 (3d Cir. 2009), Magistrate Judge Sullivan reasoned that the claims asserted in these counts were inconsistent with interpleader relief and, therefore, barred as a matter of law. (R&R 16, ECF No. 36.) In her objection, Ortiz argues that Magistrate Judge Sullivan erred because the claims asserted in these counts "give rise to potential damages in excess of the death benefit." (Def.'s Objection 9, ECF No. 41-1.)

This Court agrees with Magistrate Judge Sullivan that Hovis mandates the entry of summary judgment in New York Life's favor on Counts One, Two, Five, and Seven because they are inconsistent with interpleader relief. Under Hovis, 553 F.3d at 259, 265, a valid interpleader action shields the stakeholder – New York Life, in this case – from further liability to

7

claimants to the stake – here, the policy proceeds – who have asserted counterclaims against the stakeholder where (1) the stakeholder bears no blame for the existence of the ownership controversy and (2) the counterclaims are directly related to the stakeholder's failure to resolve the underlying dispute in favor of one of the claimants.   To permit such counterclaims in these circumstances "would run counter to the very idea behind the interpleader remedy – namely, that a 'stakeholder [should] not [be] obliged at his peril to determine which claimant has the better claim.'"   Id. at 265 (quoting Bierman v. Marcus, 246 F.2d 200, 202 (3d Cir. 1957)).   As the Third Circuit explained in Hovis, a stakeholder's "failure to choose between the adverse claimants (rather than bringing an interpleader action) cannot itself be a breach of a legal duty."   Id. at 265.[3]

Magistrate Judge Sullivan correctly applied Hovis to the claims asserted in Counts One, Two, and Seven, and to all but one aspect of the claim asserted in Count Five.   There are no facts indicating that New York Life bears any blame for the existence of the issue of whether Ortiz or Klah is the appropriate beneficiary, and the background allegations of the

---

[3] In her objection, Ortiz does not argue that Hovis was wrongly decided or should not be followed; instead, Ortiz argues only that her counterclaims are not within the Hovis rule. (Def.'s Objection 9, ECF No. 41-1.)

counterclaims and the allegations contained in these counts concern New York Life's failure to pay Ortiz the policy proceeds.[4] (See Answer & Countercl. ¶¶ 14, 24, 26, 35, 38-39 49-

---

[4] There is one slight exception for Count Five.  In that count, Ortiz alleges that New York Life

> engaged in unfair claims settlement practices by, inter alia, misrepresenting to Ms. Ortiz policy provisions relating to coverage, failing to acknowledge and act with reasonable promptness to Ms. Ortiz's communications, failing to implement reasonable standards for the investigation of her claim, failing to respond to Ms. Ortiz's claim within a timely manner, and failing to pay Ms. Ortiz's claim in a timely manner.

(Answer & Countercl. ¶ 50, ECF No. 2.)  Save for the misrepresentation aspect of Count Five, Ortiz's counterclaim for each of these alleged unfair claims settlement practices is precluded by Hovis.

Notwithstanding Hovis's inapplicability to the misrepresentation aspect of Count Five, New York Life is still entitled to summary judgment on the entirety of that count. Count Five is purportedly brought under R.I. Gen. Laws § 9-1-33 (see id. at ¶ 51), which provides a cause of action against an insurer that "wrongfully and in bad faith refuse[s] to pay or settle a claim . . . , or otherwise wrongfully and in bad faith refuse[s] to timely perform its obligations under the contract of insurance."  R.I. Gen. Laws § 9-1-33(a).  However, because New York Life seeks to deposit the policy proceeds into the registry of this Court, there has been no "refus[al] to pay or settle [Ortiz's] claim." Id. Moreover, "[b]efore a bad-faith claim can even be considered, a plaintiff must prove that the insurer breached its obligation under the insurance contract." Lamoureaux v. Merrimack Mut. Fire Ins. Co., 751 A.2d 1290, 1293 (R.I. 2000) (per curiam) (quoting Lewis v. Nationwide Mut. Ins. Co., 742 A.2d 1207, 1209 (R.I. 2000)).  Because New York Life is entitled to summary judgment on Ortiz's breach-of-contract claim, Ortiz's bad-faith claim must fail.

In her objection to the R&R, Ortiz appears to rely on a statutory section other than § 9-1-33 for her bad-faith claim; referring to that claim as one for "unfair settlement practices," she notes that "[m]isrepresenting to claimants and

50, ECF No. 2.)   At bottom, each of these claims "directly relate[s]" to the interpleader action because they "concern [New York Life's] failure to resolve its investigation in [Ortiz's] favor and pay out the life insurance proceeds to [her]." Hovis, 553 F.3d at 259, 264; see also Graziosi v. Metlife Investors USA Ins. Co., No. 3:11-CV-80 (CAR), 2013 WL 592394, at *1-5 (M.D. Ga. Feb. 14, 2013) (relying on Hovis to enter summary judgment in favor of insurer on claims of breach of contract and bad-faith refusal to pay insurance proceeds brought by the plaintiff, who was the primary beneficiary and was alleged by the family and contingent beneficiary of the insured to be

---

insured relevant facts or policy provisions relating to coverage at issue," R.I. Gen. Laws § 27-9.1-4(a)(1), is a prohibited practice under the Unfair Claims Settlement Practices Act ("the Act"), id. §§ 27-9.1-1 to 27-9.1-9.   (See Def.'s Objection 11, ECF No. 41-1.)   However, § 27-9.1-1 provides that "[n]othing contained in [the Act] shall be construed to create or imply a private cause of action for violation of this chapter." See Great Am. E&S Ins. Co. v. End Zone Pub & Grill of Narragansett, Inc., 45 A.3d 571, 575 (R.I. 2012) (holding that there is no private right of action under the Act); Solomon v. Progressive Cas. Ins. Co., 685 A.2d 1073, 1075 (R.I. 1996) (mem.) (same). Although the Rhode Island Supreme Court has stated that, notwithstanding § 27-9.1-1, the Act "set[s] forth the statutory obligations imposed upon an insurer with respect to the handling of claims and . . . evidence of any breach thereof may be admissible in a civil action alleging bad faith," Skaling v. Aetna Ins. Co., 799 A.2d 997, 1012 n.8 (R.I. 2002), the only bad-faith claim asserted by Ortiz in this action was brought under R.I. Gen. Laws § 9-1-33(a), and, for reasons already discussed, that claim must fail.

involved in the insured's death, which would have implicated Georgia's Slayer Statute).

Ortiz's objection to this aspect of the R&R – that Hovis is inapplicable because the claims give rise to damages in excess of the death benefit – misapprehends Hovis. Where, as here, the claims directly relate to the stakeholder's failure to resolve the dispute about the entitlement to the stake in favor of one of the claimants, Hovis bars the counterclaims, even if the counterclaims could potentially expose the stakeholder to liability in excess of the stake. See Hovis, 553 F.3d at 264-65 (rejecting argument that, because counterclaims would have subjected the insurer to liability apart from its duty to account for insurance proceeds, counterclaims were independent of interpleader action); Amethyst Int'l, Inc. v. Duchess, Civil Action No. 13-04287(FLW)(LHG), 2014 WL 683670, at *8 (D.N.J. Feb. 20, 2014) (entering summary judgment under Hovis on claims against insurer, even though claims sought "recovery in damages that . . . could arguably be drawn from [insurer's] own funds, not from the corpus of the disputed insurance [p]roceeds," because claims were not independent of interpleader action). Accordingly, this Court ADOPTS the R&R's recommendation with

respect to Counts One, Two, Five, and Seven and GRANTS New York

Life's motion for summary judgment on these counts.[5]

B.   Negligence

Count Three, Ortiz's counterclaim for negligence, requires

more nuanced treatment.   Close examination of Ortiz's

allegations of negligence reveals that she is asserting two

distinct claims: (1) negligence in "failing to properly

investigate and pay the claim"; and (2) negligence in "demanding

irrelevant information that was impossible for Ms. Ortiz to

obtain."  (Answer & Countercl. ¶ 41, ECF No. 2.)   Although this

Court agrees with Magistrate Judge Sullivan that New York Life

is entitled to summary judgment on each distinct claim of

negligence, the reasons differ with respect to each claim.

The first distinct claim – that New York Life negligently

failed to properly investigate and pay Ortiz's claim for the

policy proceeds – is barred by <u>Hovis</u>.   Just like Counts One,

Two, Five, and Seven, this component of Count Three directly

---

[5]   Magistrate Judge Sullivan also concluded, in the alternative, that, even if <u>Hovis</u> was inapplicable to Counts One, Two, and Seven, New York Life was still entitled to summary judgment on these claims because each count failed to state a claim.  (R&R 16 n.10, ECF No. 36.)   Because this Court grants summary judgment for New York Life on these counts on the grounds that these claims are inconsistent with interpleader relief under <u>Hovis</u>, this alternative ground for summary judgment need not be addressed.

relates to the interpleader action because it involves New York Life's failure to resolve its investigation in Ortiz's favor and pay out the policy proceeds to her.  See Hovis, 553 F.3d at 261, 265 (affirming entry of summary judgment on counterclaim against insurer for negligence in failing to promptly and properly conduct change-of-beneficiary designation); Graziosi, 2013 WL 592394, at *3-5; cf. ReliaStar v. Life Ins. Co. v. Lormand, Civil Action No. 3:10-CV-540, 2011 WL 900113, at *5 (E.D. Va. March 11, 2011) (entering summary judgment under Hovis in favor of insurer on counterclaim for violation of West Virginia Unfair Claims Settlement Practices Act, which was premised on claimant's allegation that insurer "violated the law by failing to promptly investigate and act on her claims").  Therefore, Hovis entitles New York Life to summary judgment on this portion of Ortiz's negligence counterclaim.

The analysis is different for Ortiz's second distinct claim of negligence.  Where the claim against the insurer is independent from the insurer's failure to resolve the dispute in favor of one of the claimants, the claim survives under Hovis. See Hovis, 553 F.3d at 259, 265.  Ortiz's claim that New York Life negligently demanded irrelevant information that was impossible to obtain is such a claim.  The alleged harm for this distinct negligence claim is different in kind from the harm

Ortiz suffered when New York Life failed to promptly pay the policy proceeds; this second component of Ortiz's negligence counterclaim seeks to recover for the expenses Ortiz incurred in attempting to obtain the allegedly irrelevant medical records. Additionally, the conduct alleged for this component of Count Three – the demand for irrelevant records – is distinct from and independent of the negligent conduct of failing to promptly pay the policy proceeds.

However, even though this component of Ortiz's negligence counterclaim is not barred by <u>Hovis</u>, New York Life is still entitled to summary judgment on this distinct claim because Ortiz has failed to identify any facts that tend to show that New York Life breached a duty of care owed to Ortiz.   Citing R.I. Gen. Laws § 27-4-10,[6] Ortiz argues that there is a genuine issue of material fact as to whether New York Life was justified in seeking medical records in the first place because Kaydea's death was a homicide and the policy did not ask a question for which a misrepresentation relating to a homicide could be given. (Def.'s Objection 4-6, ECF No. 41-1.)   This Court disagrees.

---

[6] This statute provides, in pertinent part, that "[n]o misstatement made in procuring a policy of life insurance shall be deemed material or render the policy void unless this matter represented shall have actually contributed to the contingency or event on which the policy is to become due and payable." R.I. Gen. Laws § 27-4-10.

Under the policy, New York Life retained the right to contest the policy if the insured died within two years of the policy's issuance. (Ins. Policy § 7.3, ECF No. 2-2.) As Ortiz conceded during oral argument before Magistrate Judge Sullivan (Hr'g Tr. 52:17-22, ECF No. 40), New York Life was entitled to initiate a contestability investigation when Kaydea died less than four months after the policy was issued. The application completed by Kaydea asked whether the applicant had been recommended by a medical practitioner to undergo any diagnostic procedures or tests within the last ninety days and whether the applicant had been unable to work or attend school for a month, or been admitted to a medical facility for more than five consecutive days, within the last two years. (Excerpts of New York Life's Claim File, Part I, at 3, ECF No. 17-1.) Magistrate Judge Sullivan correctly observed that it is possible that, although an applicant might give negative answers to these questions, the applicant's medical records might reveal a terminal illness that would have required an affirmative response; furthermore, an applicant with such a terminal illness might obtain life insurance and subsequently arrange his or her own death. (R&R 18, ECF No. 36.) Upon receipt of a claim for policy proceeds, an insurer would have no way of knowing whether such a disqualifying misrepresentation has been made unless it

15

initiates a contestability investigation and obtains the applicant's medical records.   Indeed, the contractual right to contest the policy within the specified contestability period would mean little if the insurer was not permitted to confirm that no disqualifying misrepresentations were made.   Cf. 16 Williston on Contracts § 49:94 (4th ed.) ("Within the contestability period, the company is free to contest liability on its policy, including by bringing an action for rescission of the policy.").   Therefore, this Court agrees with Magistrate Judge Sullivan that New York Life was entitled to request Kaydea's medical records as part of its concededly appropriate contestability investigation.

Ortiz has failed to articulate how New York Life negligently breached a duty owed to Ortiz by reiterating the request for Kaydea's medical records that it was initially entitled to make.   The sole argument advanced by Ortiz in this regard appears to be that a jury may infer from the delay alone that New York Life was using Ortiz's inability to obtain the medical records to stall long enough to find some other reason to avoid paying her the policy proceeds.   (See Def.'s Objection 6-8, 11-12, ECF No. 41-1.)   But it is an unclear how this "ruse" theory fits within the negligence rubric or how it tends to show that New York Life "negligently[ ] demand[ed] irrelevant

16

information." (Answer & Countercl. ¶ 41, ECF No. 2.) In any
event, Ortiz has not marshalled any facts supporting her
negligent-stalling theory, if such a theory of negligence is
even cognizable. For these reasons, this Court ADOPTS
Magistrate Judge Sullivan's recommendation that New York Life be
granted summary judgment on Count Three, and New York Life's
motion for summary judgment is GRANTED as to that count.

C.   Misrepresentation

Finally, with respect to the misrepresentation or omission
counterclaim asserted in Count Four, Magistrate Judge Sullivan
correctly determined that Hovis was inapplicable. (R&R 16, ECF
No. 36); see J.G. Wentworth Originations, LLC v. Mobley, Civil
Action No. 11-cv-1406, 2012 WL 4922862, at *8 (D. Md. Oct. 12,
2012) (concluding that counterclaim for negligent
misrepresentation was not barred by Hovis). Additionally, she
recommended that New York Life was entitled to summary judgment
because New York Life was not required to disclose that a policy
beneficiary is a murder suspect and that Ortiz had identified no
facts showing that New York Life committed an actionable
misrepresentation or omission. (R&R 19-20, ECF No. 36.) In her
objection, Ortiz does not challenge Magistrate Judge Sullivan's
conclusion that New York Life did not need to disclose its
belief that Ortiz may have been ineligible for the policy

17

proceeds under R.I. Gen. Laws § 33-1.1-11, but she takes umbrage with Magistrate Judge Sullivan's determination that Ortiz failed to show an actionable misrepresentation. (Def.'s Objection 10, ECF No. 41-1.) After a careful review of the record, this Court determines that genuine issues of material fact preclude summary judgment on Ortiz's misrepresentation claim.

Count Four asserts both intentional and negligent misrepresentation. (Answer & Countercl. ¶¶ 43-48, ECF No. 2.) Under Rhode Island law, there are four elements of the tort of negligent misrepresentation:

> (1) a misrepresentation of a material fact; (2) the representor must either know of the misrepresentation, must make the misrepresentation without knowledge as to its truth or falsity or must make the representation under circumstances in which he [or she] ought to have known of its falsity; (3) the representor must intend the representation to induce another to act on it; and (4) injury must result to the party acting in justifiable reliance on the misrepresentation.

Cruz v. DaimlerChrysler Motors Corp., 66 A.3d 446, 453 (R.I. 2013) (quoting Manchester v. Pereira, 926 A.2d 1005, 1012 (R.I. 2007)); see also Zarrella v. Minn. Mut. Life Ins. Co., 824 A.2d 1249, 1257 (R.I. 2003). The tort of intentional misrepresentation, also referred to as fraud or deceit, has similar elements. See Francis v. Am. Bankers Life Assur. Co. of Fla., 861 A.2d 1040, 1046 (R.I. 2004) (per curiam) ("To recover

on this claim, plaintiff had the burden of proving that defendant 'in making the statement at issue, knew it to be false and intended to deceive, thereby inducing [plaintiff] to rely on the statements to [her] detriment.'" (quoting Katz v. Prete, 459 A.2d 81, 84 (R.I. 1983))); see also Guilbeault v. R.J. Reynolds Tobacco Co., 84 F. Supp. 2d 263, 268 (D.R.I. 2000); Halpert v. Rosenthal, 267 A.2d 730, 732-33 (R.I. 1970).

Contrary to New York Life's assertion that "Ortiz has never been able to point out a misrepresentation made to her in this record" (Pl.'s Resp. 7, ECF No. 44), Ortiz avers in her affidavit that "[New York Life] represented to both me and my attorney that the only impediment to payment of the life insurance proceeds was Mr. Kaydea's medical records." (Ortiz Aff. ¶ 25, ECF No. 21.)[7] Because New York Life knew as of mid-

---

[7] To be sure, the record is not entirely clear that this representation actually occurred. Immediately after this averment is made, Ortiz's affidavit cites, with a see signal, two exhibits. A review of these exhibits (Exs. B & C to Ortiz Aff., ECF Nos. 21-3, 21-4) did not reveal the alleged representation. However, it is unclear whether the above-quoted sentence merely represents Ortiz's efforts to editorialize or summarize the written correspondence contained in the exhibits, on the one hand, or the cited exhibits are meant only to be illustrative of New York Life's statements, on the other hand. This uncertainty is compounded by paragraph 11 of Ortiz's affidavit, which avers, "Based upon the statements made to me by Tashema Hughes of New York Life, I believed Mr. Kaydea's medical records to be the only impediment to New York Life's payment of the policy benefits." (Ortiz Aff. ¶ 11, ECF No. 21.) It is not clear whether Ortiz formed this belief as a result of the

19

May 2013 that police had not ruled anyone out as a suspect and that Ortiz was a person of interest (Pl.'s SUF ¶ 12, ECF No. 18), there are genuine issues of material fact as to whether this representation was false and, if so, whether New York Life knew or should have known that the representation was false at the time the statement was made.   Additionally, there is a genuine issue of material fact as to whether this representation was material; whether a misrepresentation is "likely to affect the conduct of a reasonable person," Dudzik v. Leesona Corp., 473 A.2d 762, 766-67 (R.I. 1984), is a quintessential jury question.   New York Life's repeated requests for Kaydea's medical records (see Exs. B & C to Ortiz Aff., ECF Nos. 21-3, 21-4) raise a genuine issue of material fact as to whether New York Life intended for its representation to induce reliance on Ortiz's part.   Finally, a genuine issue of material fact exists as to whether the injuries Ortiz allegedly suffered – the expense of hiring an attorney to assist in obtaining the medical records (Ortiz Aff. ¶¶ 12, 16, ECF No. 21) – constituted

---

written correspondence between Hughes and Ortiz that is included in Exhibit B to her affidavit or whether Hughes made other oral or written statements to Ortiz.   For present purposes, these uncertainties must be resolved in Ortiz's favor, and her sworn statement that New York Life told her that the only impediment to payment was the medical records must be taken as true.

justifiable reliance on the representation.[8]   Because of the existence of these genuine issues of material fact, New York Life is not entitled to summary judgment on Count 4, and this Court therefore REJECTS the R&R's treatment of this count.

For these reasons, New York Life's motion for summary judgment is GRANTED with respect to Counts One, Two, Three, Five, Six, and Seven, and DENIED with respect to Count Four.

II. Applicable Interest Rate Issue

Ortiz and New York Life dispute the interest rate applicable to the policy proceeds.   Relying on R.I. Gen. Laws § 27-4-26, Ortiz argues that the applicable interest rate is nine percent per annum.[9]   (Def.'s Opp'n to Mot. for Interpleader Relief 11-12, ECF No. 22.)   New York Life, by contrast, insists that interest accrues on the policy proceeds at a rate of one percent.   (Pl.'s Mot. for Interpleader Relief 10-11, ECF No.

---

[8]   In her objection, Ortiz identifies two other misrepresentations made to her by New York Life.   (Def.'s Objection 10, ECF No. 41-1.)   Because this Court finds that genuine issues of material fact exist as to the alleged misrepresentation mentioned above, it need not address these additional misrepresentations.

[9] Section 27-4-26 provides, in pertinent part, that:
An insurer of a life insurance contract . . . shall pay to the beneficiary . . . interest on the proceeds at the rate of nine percent (9%) per annum from the date of the death of an insured . . . in connection with a death claim on a life insurance policy . . . to the date of payment and the interest shall be added to and be a part of the total sum paid.

14.)   It contends that the policy specifies this interest rate and, because the policy was approved by the Interstate Insurance Product Regulation Commission ("Interstate Commission") pursuant to the Interstate Insurance Product Regulations Compact ("Compact"), see R.I. Gen. Laws §§ 27-2.5-1 to 27-2.5-2, Section 27-4-26 is inapplicable.   (Pl.'s Mot. for Interpleader Relief 10-11, ECF No. 14.)   In her R&R, Magistrate Judge Sullivan determined that Section 27-4-26 controlled, concluding that Section 27-4-26, a specific statute, prevailed over the Compact, a conflicting general statute.   (R&R 22-23, ECF No. 36.)   New York Life objects to this aspect of the R&R.   (Pl.'s Objection 3-10, ECF No. 39.)

This Court declines to decide this issue at this time.   New York Life's position that the combination of (1) the Compact, (2) the applicable uniform standard that has been promulgated by the Interstate Commission, and (3) the rate set by New York Life for funds left on deposit mandates that the applicable interest rate is one percent has been fully and capably briefed and argued, both by New York Life and by the National Association of Insurance Commissioners, as amicus curiae.   The Court fully understands this position, and a literal reading of the Compact and the applicable uniform standard appears to support it.

22

On the other hand, there are public-policy considerations that may cut against New York Life's argument.  Not only has the General Assembly delegated some of the state insurance commissioner's regulatory authority to the Interstate Commission under the Compact, but also the Interstate Commission has, by promulgating a uniform standard that directs that "[i]nterest shall accrue at the rate or rates applicable to the policy for funds left on deposit" (IIPRC-L-04-I § 3(G)(2)(b), Ex. A to Schutter Aff., ECF No. 39-1), delegated some of its own regulatory authority to the insurance companies who submit life insurance policies to the Interstate Commission.  Although the General Assembly may have intended the first delegation by enacting the Compact, it is unclear whether it anticipated the second delegation, and this second delegation may implicate serious consumer protection concerns.  And, unlike New York Life's position, these public-policy considerations have not been adequately briefed.

Compounding matters, although a version of the Compact has been adopted in forty-three other jurisdictions, see Update on the Interstate Ins. Compact, Interstate Ins. Prod. Reg. Comm'n, available                                                                    at http://www.naic.org/documents/protectingthefuture_interstate_ins urance_compact.pdf (last visited Sept. 30, 2015), the parties

have not cited – and the Court has not found – any case interpreting the Compact, let alone one addressing the issue presented by this case.   This dearth of authority further convinces the Court that it should not decide this question until after it has received adequate briefing on both sides of the issue.   Therefore, as set forth below, the Court will invite supplemental briefing before ruling on the issue.

However, the delay occasioned by supplemental briefing of the interest rate issue should not prevent New York Life from depositing the principal amount of the policy proceeds into the registry of this Court.   Therefore, New York Life is directed to deposit $250,000.00 into the registry of this Court.   The date on which this deposit occurs shall constitute "the date of payment" – either under the policy (see Ins. Policy § 6.1, ECF No. 2-1) or under R.I. Gen. Laws § 27-4-26 (see Hogan v. Jackson Nat'l Life Ins. Co., C.A. No. 14-340 S, Order 2-3, ECF No. 16). Upon deposit of the principal amount, interest will no longer accrue on the policy (see Ins. Policy § 6.1, ECF No. 2-1; see also R.I. Gen. Laws § 27-4-26), although New York Life will still be liable for depositing interest that accrued from the date of Kaydea's death until the date of the deposit of the principal amount once the interest rate issue is resolved by the Court.

24

III. Conclusion

The Court hereby ADOPTS all aspects of the R&R except with respect to its treatment of New York Life's entitlement to summary judgment on Ortiz's counterclaim for misrepresentation and the applicability of Section 27-4-26 to the interest rate on the policy proceeds.  New York Life's motion for summary judgment is GRANTED with respect to Counts One, Two, Three, Five, Six, and Seven and DENIED with respect to Count Four.  New York Life's motion for interpleader relief is GRANTED in all respects except for its request for attorneys' fees and the interest rate issue.  New York Life is directed to deposit $250,000.00 – the principal amount of the policy proceeds – into the registry of this Court.  Finally, with respect to the interest rate issue, any interested party is invited to file amicus curiae briefs within ninety (90) days from the date of this Order.  The clerk is directed to send this Order to the Office of the Rhode Island Attorney General, the Rhode Island Association for Justice, for possible filing of an amicus brief on this issue.

IT IS SO ORDERED.

William E. Smith
Chief Judge
Date:  September 30, 2015

25